Filed 6/18/15  Fullerton v. King CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RICHARD FULLERTON,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HOWARD E. KING,<br><br>        Defendant and Appellant. | A142457<br><br>(Marin County<br>Super. Ct. No. CIV1205037) |

Defendant Howard E. King appeals a judgment, entered upon the granting of plaintiff Richard Fullerton's motion for summary adjudication, that permanently enjoins King from motorizing an existing gate across a private road on which Fullerton holds an easement. He contends the court interpreted too restrictively the terms of the easement governing Fullerton's right to use the private road for ingress and egress. We agree and shall therefore reverse the judgment and remand for further proceedings to determine whether the gate unreasonably burdens Fullerton's right of use.

**Factual and Procedural History**

In 1986, Herbert Damner subdivided a seven-acre parcel in the town of Ross into three separate lots (104, 106, and 108 Laurel Grove). In creating the subdivision, Damner recorded in the Marin County Recorder's Office both a parcel map depicting the subplot boundaries and a declaration of covenants, conditions, and restrictions (CC&Rs) attached to the subdivided lots. As depicted on the parcel map, 104 Laurel Grove adjoins the public street, 106 Laurel Grove is behind 104 Laurel Grove and 108 Laurel Grove is the farthest from the public street of the three subdivided lots. A private road runs over a

1

portion of 104 Laurel Grove, providing passage from the public road to the other two subdivided lots. The CC&Rs that govern use of the subdivided lots create the following easement: "Easements for ingress and egress, emergency vehicle access and installation and maintenance of utilities and drainage facilities are reserved as shown on the Map over Lot1 [104 Laurel Grove] for the benefit of Lots 2 and 3 [106 and 108 Laurel Grove]. The granted ingress and egress Driveway Easement shall be for the purposes of serving Dwellings on each Lot. No structure, planting or other material shall be placed or permitted to remain which may damage or interfere with the right of use and enjoyment held by the dominant tenements over the servient tenement." Under section 1.4 of the CC&Rs, "The term 'Driveway easement' shall mean and refer to the ingress/egress easement located on Lot 1 as shown and depicted on the map which serves the subject property." [1]

Currently, each of the subdivided lots is independently owned. Fullerton owns the property at 108 Laurel Grove. King, as trustee of the Laurel Grove Trust, owns the 104 Laurel Grove property, which is occupied by a well-known public figure and his family, including three young children.

When King purchased the 104 Laurel Grove property in 2011, there was a manually operable iron gate at the point where the private road over the easement intersects Laurel Grove Street. King installed mechanization of the gate, which was completed in October 2012. The features of the mechanized gate include 1) remote control access for subdivision residents, such as Fullerton, or for those with frequent access requirements (e.g., maintenance workers); 2) a numerical keypad on the public side of the gate to allow entry by use of a programmed code; 3) a sensor loop embedded underneath the road surface on the inside of the gate, connected and programmed to

---

[1] The certificate page of the parcel map filed by Damner includes an offer of public easements that "shall be kept open and free from permanent buildings and structure of any kind," for sewer, public utility, drainage, waterline and a roadway. The certificate page indicates, however, that the city accepted the sewer and public utilities easements but rejected the drainage, waterline and roadway easements.

allow instantaneous vehicle egress without the need for remote control or code entry; 4) sensors located on the public side of the gate, connected and programmed as part of safety features to prevent gate entrapment; and 5) a "Knox box" key switch installed at the exterior gate keypad to provide emergency personnel with unrestricted access to the subdivision properties.

In November 2012, Fullerton filed a complaint seeking declaratory relief that the mechanization of the existing gate violates the CC&Rs and overburdens Fullerton's property rights in the easement.[2] Fullerton requested, among other things, a permanent injunction requiring removal of the "new gate structure." King cross-complained for declaratory relief that the gate does not violate the easement and for an order declaring the parties' respective rights and duties in connection with the easement.

In September 2013, Fullerton moved for summary judgment or summary adjudication, alleging that mechanization of the existing gate is absolutely prohibited by the easement in the CC&Rs. The court granted the motion for summary adjudication of two causes of action, concluding that the express language of the easement prohibits mechanization of the gate and thus violates the CC&Rs. The court explained that the "*express language of the CC&R's prohibits any structure interfering with the ingress and egress*." The court opined that the reasonableness of any interference is irrelevant because "the language unmistakably manifests the intent to prohibit any physical obstruction . . . that could interrupt or hinder, even temporarily, a resident['s] use of that roadway." The court concluded that, as a matter of law, Fullerton is entitled to a judicial declaration "finding him to have non-exclusive use of the private roadway easement that is free from placement of [King's] gate across the roadway, even temporarily," and to a permanent injunction "barring [King] from using the gate to obstruct access to the roadway easement at any time."

---

[2] The complaint also raised issues regarding a security camera installed on King's property that are not at issue on appeal.

Pursuant to an agreement of the parties, the remaining claims were dismissed without prejudice and a final judgment was entered. Notice of entry of judgment was served and King timely filed a notice of appeal.

## Discussion

King challenges the trial court's determination that as a matter of law the mechanization of the existing gate violates the terms of the CC&Rs. As noted above, the relevant provision of the CC&R's provides that "No structure . . . shall be placed or permitted to remain which may damage or interfere with the right of use and enjoyment held by the dominant tenements over the servient tenement."

"The interpretation of an easement, which does not depend upon conflicting extrinsic evidence, is a question of law." (*Van Klompenburg v. Berghold* (2005) 126 Cal.App.4th 345, 349.) " 'It is fundamental that the language of a grant of an easement determines the scope of the easement.' [Citation.] 'In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired.' " (*Ibid*.)

In *Van Klompenburg*, the court held language in an easement expressly stating that a roadway was to be "kept open" and "wholly unobstructed" precluded owners of the servient estate from maintaining closed gates across the easement. (*Van Klompenburg v. Berghold*, *supra,* 126 Cal.App.4th at p. 350.) The court recognized that " ' "unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances that such was the intention, the owner of the servient estate may erect gates across the way, if they are constructed so as not unreasonably to interfere with the right of passage." ' [Citation.] However, '[w]here an easement under a grant is specific in its terms, "[i]t is decisive of the limits of the easement." ' " (*Ibid.*)

In the present case, the easement does not expressly stipulate that the roadway be kept "open" and does not include any modifiers of the word "interfere" similar to the "wholly unobstructed" terminology in *Van Klompenburg*. The easement prohibits placement of a "structure" that "may damage or interfere with the right of use and

4

enjoyment held by the dominant tenements." The trial court noted that "interfere" is defined in Webster's Universal College Dictionary (1997) as " 'to come into opposition or collision so as to hamper, hinder, or obstruct someone or something.' " Other dictionaries define the word somewhat differently. The Merriam-Webster dictionary appears the closest to that relied on by the trial court, defining "interfere" as "to interpose in a way that hinders or impedes: come into collision or be in opposition." (<http://www.merriam-webster.com/dictionary/interfere> [as of June 18, 2015].) That dictionary defines "hinder" as including "to delay" as well as to "impede, or prevent action." Other dictionaries define "interfere with" as "Prevent (a process or activity) from continuing or being carried out properly" (Oxford University Press <http://www.oxforddictionaries.com/us/definition/american_english/interfere> [as of June 18, 2015]) and "to prevent something from happening or developing in the correct way" (Macmillan Dictionary, Macmillan Publishers Limited (<http://www.macmillandictionary.com/us/dictionary/american/interfere-with> [as of June 18, 2015].) As the various definitions of the term "interfere" indicate, the word may mean to hinder or it may mean to prevent. The latter interpretation is more consistent with the general rule that permits reasonable interference with a right of use. (*Van Klompenburg v. Berghold*, *supra,* 126 Cal.App.4th at p. 350; see also *Scruby v. Vintage Grapevine, Inc*. (1995) 37 Cal.App.4th 697, 702-703 ["The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose."].)

Nor do the circumstances at the time of the grant suggest an unequivocal intent that the driveway be kept open and no gate be placed across its entrance. It is undisputed that an iron gate was in place before the easement was created. Fullerton does not suggest that the gate that stood at the entrance to the private road when King purchased his property contravened the terms of the easement. Although conflicting evidence was submitted as to whether the gate previously functioned as a gate or was intended merely to be ornamental, the undisputed evidence establishes that the gate was capable of being opened and closed manually. We cannot say that the language used in the easement

reflects a clear and express intent to prohibit modifying the gate to operate mechanically or electronically, or of implementing reasonable means by which to prevent unauthorized access to the private road. [3]

Quite obviously, the purpose of the easement is to permit the occupants of Laurel Grove 106 and 108 (and their invitees) to have access between their homes and the street. Installing mechanization so that the gate can be opened and closed electronically does not necessarily interfere with the ability to gain passage over the private road. The purpose of the easement is not defeated so long as no more than minimal reasonable steps are required to make use of the driveway. Factual assessment must be made to determine whether the specifics of the installation and its method of operation are reasonable under the circumstances. (*Scruby v. Vintage Grapevine, Inc.*, *supra*, 37 Cal.App.4th at p. 703.) Accordingly, we reverse the judgment and the court's order granting Fullerton's motion for summary adjudication and remand for further proceedings.

**Disposition**

The judgment and order granting summary adjudication are reversed and the matter is remanded for further proceedings consistent with this opinion. King shall recover his costs on appeal.

---

[3] Fullerton suggests that the language used in conjunction with the offer of a public easement in the parcel map, that the easement be "kept open and free," reflects Damner's intent that the "roadway" remain open and unobstructed even though the dedication of a roadway easement was declined. To the contrary, the fact that such express language was used in the parcel map and not in the CC&Rs suggests that the private "driveway easement" was not intended to be as restrictive as the offered public "roadway easement." Moreover, there is no merit in Fullerton's alternative argument that the "roadway easement granted by the parcel map" prohibits, as a matter of law, the maintenance of "gates that obstruct [his] only access to his home," since the public easement was rejected by the city.

6

_____
Pollak, J.

We concur:


_____
McGuiness, P. J.


_____
Siggins, J.