Filed 1/10/14 (unmodified version attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| BRIAN RYE,<br><br>　　　　Plaintiff, Cross-defendant and Respondent,<br><br>　　v.<br><br>TAHOE TRUCKEE SIERRA DISPOSAL COMPANY, INC.,<br><br>　　　　Defendant, Cross-complainant and Appellant;<br><br>DAWN C. RYE,<br><br>　　　　Cross-defendant and Respondent. | C067970<br><br>(Super. Ct. No. SCV22362)<br><br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 16, 2013, be modified as follows:

On page 12, following the first paragraph and before heading "C.  The Lease," add the following:

> On Petition for Rehearing Tahoe Truckee argues that the trial court failed to consider objective evidence of the intent of the parties in 1980 regarding the scope of use of the easement.  To support that claim, Tahoe

1

Truckee conflates the easement with the lease, referring to "the evidence relating to the circumstances surrounding the 1980-1982 transaction."

There was no 1980-1982 transaction. There were three transactions, the failed exchange of properties in 1980, the easement in 1981, and the lease in 1982. Both the easement and the lease were initiated for the same purpose, to redress the failure of the parties to complete an exchange of properties. The issue is whether that purpose shows that the scope of the easement in 1981 was to grant the easement holder the right to use the whole of the easement property. But conflating the easement and lease to prove the intent in drafting the easement proves too much. If the easement achieved the purpose to grant the use of the whole of the property in 1981, what purpose did the lease serve in 1982?

A signal difference between an easement and a lease is the scope of use of the subject property. A lease grants the right to the exclusive occupation and use of the whole of the property, an easement is limited to the right granted in the easement. If the express language of the easement grants the right to use the whole of the property, the easement is exclusive. But the language of the easement in this case is not exclusive and Rye agrees. An exclusive easement must explicitly say so. Thus, if the lease was necessary to achieve that purpose, it could only have been to cure a defect in the easement, which means that the easement failed to achieve the purpose of granting the easement holder a right to use the whole of the property.

Thus, no inference can be drawn from the events giving rise to the easement that it was meant to grant the Ryes the scope of use of the easement requested.

There is no change in the judgment.

2

Appellant's petition for rehearing is denied.


BY THE COURT:


   RAYE                , P. J.


   BLEASE            , J.


   NICHOLSON       , J.

Filed 12/16/13 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| BRIAN RYE,<br><br>   Plaintiff, Cross-defendant and Respondent,<br><br>  v.<br><br>TAHOE TRUCKEE SIERRA DISPOSAL COMPANY, INC.,<br><br>   Defendant, Cross-complainant and Appellant;<br><br>DAWN C. RYE,<br><br>   Cross-defendant and Respondent. | C067970<br><br>(Super. Ct. No.<br>SCV22362) |

APPEAL from a judgment of the Superior Court of Placer County, Charles Wachob, Judge. Affirmed.

Sinclair Law Office, Sinclair Wilson Baldo & Chamberlain and Robert F. Sinclair for Defendant, Cross-complainant and Appellant.

Porter Simon, Professional Corporation and Louis A. Basile for Plaintiff, Cross-defendants and Respondents.

This is a tale of intertwined claims of right by the plaintiffs to the use of property at Kings Beach, Lake Tahoe, for the parking of garbage trucks and the storage of garbage bins. One claim is predicated on an easement, the other on a lease. The property subject

1

to the easement and lease is referred to as a portion of "Parcel One." The property, owned by plaintiffs Brian and Dawn Rye (the Ryes), is the subject of a complaint and cross-complaint to determine the rights of the parties to its use. The complaint by Brian Rye, based on the easement, seeks to bar defendant Tahoe Truckee Sierra Disposal Company, Inc. (Tahoe Truckee) from the use of the area subject to the easement beyond its historic uses. The cross-complaint by Tahoe Truckee against the Ryes claims the right to use all of the subject property, as the need arises, either by reliance on the easement or the lease.[1] The lease and the easement oddly concern the use of the same piece of property for the same purposes. If the lease is valid, there is no need to rely on the easement since the rights conferred by it are encompassed within the lease.

Defendant Tahoe Truckee operates a garbage disposal business and has need of the area of the property subject to the easement or lease for the use of its garbage trucks and the storage of its garbage bins. The easement derives from a reservation in a 1981 recorded deed transferring the servient tenement to the Ryes' predecessors. The unrecorded lease derives from a purported 1982 agreement between the Shaffers and Tahoe Truckee. The parties disagree whether Tahoe Truckee may expand its parking and storage within the area subject to the easement beyond its historic uses. They necessarily disagree whether the lease was invalid or abandoned.

The property is described on a survey map as subject to an "easement for parking, ingress, egress, utilities and storage in favor of" Kings Beach Disposal Company, Inc. (Kings Beach) doing business as Tahoe Truckee.[2] (Appendix A, *post,* p. 14.) The map shows a paved area and a dirt area. The reservation in the grant deed describes an

---

[1] The complaint was filed by Brian Rye alone but the cross-complaint named both Brian and Dawn Rye. For convenience of designation the court will refer to both as plaintiffs.

[2] Silvano Achiro answered "correct" to the assertion that Kings Beach "does business as Tahoe Truckee . . . ." Accordingly, we shall use their names interchangeably.

2

easement over the property for "ingress, egress, parking, storage, [and] utilities . . . ."[3]  A shaded area on a drawing attached to the grant deed shows the contested area of Parcel One.  (Appendix B, *post,* p. 15.)

A substantially identical area to the drawing of a portion of Parcel One is shown on an exhibit to an unrecorded, 1982, 99-year lease from the Shaffers to Kings Beach (Tahoe Truckee) for use "in conjunction with its solid waste disposal business, including the storage of empty garbage bins."  The terms of the lease (exhibit 57) parallel the area and purpose of the easement.  Neither Tahoe Truckee nor the owners of Parcel One sought to enforce the lease in the 22 years from its inception until its sale to the Ryes. The trial court ruled that, assuming the validity of the lease, it had been abandoned because "Tahoe City Disposal Company [(Tahoe Truckee)] clearly disregarded the lease as soon as it was signed."  "[A]lthough the lease was valid when formed, the lease was completely ignored and abandoned."

The trial court also ruled that the terms of the written easement were not exclusive. It limited the defendant to the historic use of the paved area and 10 feet beyond the paved area.  It issued an injunction barring Tahoe Truckee from expanding its use beyond this area.  We agree.

We shall affirm the judgment limiting the defendant to the historic uses of the easement.

FACTS

The case was tried to the court and the facts are taken mainly from the trial court's statement of decision.

---

[3]  The scope of the easement for ingress and egress from the area subject to the easement was not litigated.

3

## A.  The Easement

The defendant, Tahoe Truckee, is the owner of a recorded easement over a portion of Parcel One at Kings Beach, California for the use by its garbage trucks and the storage of its garbage bins.

Originally Kings Beach owned two adjoining parcels, Parcel One and parcel 27. The Shaffers owned two other lots, including parcel 26, adjacent to Parcel One.  In 1980 the Shaffers sold their 50 percent interest in Kings Beach to Tahoe City Disposal Company, Inc. (Tahoe Truckee).  In the same year the Shaffers agreed to a land swap whereby they transferred parcel 26 to Kings Beach in exchange for the western portion of Parcel One owned by Kings Beach.  In 1981 the Shaffers performed their part of the agreement but Kings Beach was unable to convey the western portion Parcel One to the Shaffers.  "One result of the transaction was that Kings Beach . . . then owned Parcels 26 and 27, both of which were adjacent to Parcel One.  As part of the transaction, Kings Beach . . . desired to maintain an easement from Parcels 26 and 27 over Parcel One."  Accordingly, when Kings Beach transferred Parcel One by deed to the Shaffers on June 11, 1981, the deed "RESERV[ED] THEREFROM an easement for ingress, egress, parking, storage, utilities over a portion of Parcel One . . . , lying Easterly of the Northerly prolongation of the Westerly line of the land conveyed to Bud L. Shaffer, et ux., by deed recorded September 28, 1971 in Book 1374 at Page 361."

The trial court ruled that "[t]he precise derivation of [the] easement language was not established at trial.  . . . S[i]lvano Achiro [(a principal in Tahoe Truckee)] was the only trial witness involved . . . in the 1981 transaction that culminated in [the] easement language."  The trial court "provisionally received, without actually admitting," Achiro's testimony that he intended that the easement holder "be able to use the entire easement area . . . for trucks, parking, storage or other disposal business operations."  The testimony was never admitted.  The court said:  "Because the language [of the easement]

4

is not *reasonably* susceptible to another meaning . . . there is no need to resort to extrinsic evidence to ascertain the intent of the parties."

The area of the servient tenement is shown on a plot map prepared by Brian Rye. (Appendix A, *post,* p. 14.) The map describes the area as subject to an "easement for parking, ingress, egress, utilities and storage in favor of Kings Beach Disposal" and language identical to that is contained in the easement. The map shows a paved area and an unpaved area.

At some point Parcel One was purchased from the Shaffers by John Serpa, who in turn offered to sell it to plaintiff Brian Rye's father Gerald Rye and Simon Thomas for use as a tree maintenance and wood supply service known as Bushwhackers, Inc. (Bushwhackers). In 1995 Gerald Rye entered into an agreement to purchase Parcel One from John Serpa. "A condensed version [of the transaction] thereafter includes the purchaser's failure to make required payments to Serpa, and Serpa's failure to remove easements to the property." In 2004 Gerald Rye's son, Brian Rye, became Gerald's assignee under the agreement. There followed numerous letters from Brian Rye's attorneys asking that Serpa comply with the underlying agreement to expunge the easements on Parcel One. The easement was not expunged and the sale was completed by separate agreement with the Ryes.

Accordingly, in 2004 the Ryes, by grant deed from Serpa, "became record title holders of the servient tenement . . . Parcel One, burdened by an easement in favor of [Tahoe Truckee]." From 1996 to 2004 the parties coexisted within the easement area with the defendant using the paved area and a small portion of the unpaved area and Bushwhackers using the unpaved areas. In 2004 Placer County ordered Bushwhackers to cease all business operations on the parcel.

The easement area was paved by Tahoe Truckee so that front loader vehicles could turn. Silvano Achiro testified that it was his company (Tahoe Truckee) that paved the area. The dirt area was used almost exclusively by Bushwhackers for the parking of

its vehicles, for storage of cut timber, for wood chipping, and for ingress and egress by its trucks and equipment to store piles of wood on the property. Tahoe Truckee's route supervisor testified that from 1995 through 2004 Tahoe Truckee used the paved area as a staging area where its trucks came in and out with dumpsters on a near-daily basis. In 2000 large areas of Bushwhackers's wood rounds started appearing in the dirt portion of the easement area, which impeded Tahoe Truckee's trucks from using the non-paved areas to unload its dumpsters.

The trial court issued a judgment finding that Tahoe Truckee is "entitled to continued use of the paved area [of the servient tenement] only for storage and parking. Its continued use for those purposes shall extend ten feet past the edge of the paved area, consistent with the evidence of its prior use of that portion of the dirt area for storage of garbage bins or dumpsters." The trial court issued an injunction barring Tahoe Truckee from use of the servient tenement beyond these areas.

## B. The Lease

Tahoe Truckee claims that on August 20, 1982, Kings Beach (Tahoe Truckee) entered into a lease with the Shaffers.

The record contains two copies of the lease agreement, exhibits 2 and 57. They are not identical. While the general terms are the same, exhibit 2 contains blanks where exhibit 57 shows the beginning and end dates of the lease. ". . . Exhibit 57 contains the initials of the parties at the bottom of the pages, while Exhibit 2 does not; and Exhibit 57 contains an attached exhibit showing the property [(similar to the easement)], while Exhibit 2 does not." Exhibit 57 contains an added inscription showing the signature of Budd J. Shaffer and the date "9-12-09" together with a notarized acknowledgement of Shaffer's signature, dated September 11, 2009. "The Shaffers did not testify at trial, and there is no indication their depositions were taken, although defendants evidently [knew] the whereabouts of the Shaffers."

6

The trial court stated that the "circumstances concerning [the] lease are murky at best, and highly suspicious, at worst." It put aside the "obvious questions concerning the authenticity of the lease (Exhibit 57)" and "assum[ed] the lease to be valid" for the purpose of considering whether it had been abandoned. It said: "[E]ven assuming the purported lease was properly authenticated, the later discovery and reaction to the lease raise questions about the vitality of the lease."

The lease (exhibit 57) states that on August 20, 1982, the Shaffers conveyed to Tahoe City Disposal Company, Inc. (Tahoe Truckee) a 99-year lease of the same portion of Parcel One subject to the easement. The terms of the lease permit the lessee to "use the leased premises in conjunction with its solid waste disposal business, including the storage of empty garbage bins." The lease further recites that "the parties . . . have agreed to enter into this long term lease agreement to provide the lessee with the use and benefit of the property . . . in full satisfaction of lessor's obligation to exchange and transfer such real property to the lessee."

The lease was signed on behalf of Tahoe City Disposal Company, Inc. (Tahoe Truckee) by Silvano Achiro, a member of the family that owned and still owns the disposal companies, and by the former owners of Parcel One, the Shaffers. The Shaffers later sold Parcel One to John Serpa. Serpa negotiated with Brian Rye or his father for the sale of Parcel One for eight years without either party mentioning the lease. In 2004, just before completion of the sale to the Ryes, he sent an incomplete copy of the lease (exhibit 2) to Brian Rye. The "original lease [(exhibit 57)] with the original exhibit" was located in the files of Tahoe Truckee in 2008. Neither Tahoe Truckee or the Ryes (or their predecessors) invoked the provisions of the lease for the 22 years from its inception in 1982 to the sale to the Ryes in 2004.

Brian Rye testified that he became aware of the lease on January 6, 2004, when John Serpa faxed a copy of the incomplete lease (exhibit 2) to Rye's attorneys during the period when Rye was in the process of purchasing Parcel One. Rye had never seen the

7

lease and Tahoe Truckee's use of the servient tenement was consistent with its use under color of an easement. "Rye doubted that the purported lease was effective. He had not heard of such a lease before, and no such lease [had] been recorded as of that time." "In September 2009, well after [the] litigation was underway, counsel for [Tahoe Truckee] arranged to have the lease (Exhibit 57) executed by Budd Shaffer in the presence of a notary."

The trial court concluded that the parties "acted in a manner consistent with the lease having no effect, or with there being no lease at all." Tahoe Truckee never took possession of the leased area other than the part used for the easement and in 2000 asserted by letter to Bushwhackers only an easement interest in the subject area. Two of Tahoe Truckee's employees testified that they were unaware of the lease, but it was signed by Silvano Achiro in 1982, on behalf of Tahoe Truckee, and the original was found in Tahoe Truckee's files. The trial court concluded that "[f]or all intents and purposes, [Tahoe Truckee] and its predecessors acted as if there was no lease, as did the Ryes and their predecessors."

The trial court found that, assuming the validity of the lease, Tahoe Truckee "never intended to perform any lease obligations . . . and that it did not use the claimed lease area for significant periods of time." It concluded that the leaseholder had abandoned the lease and the rights of the parties were governed by the easement and its historical uses.

DISCUSSION

A. The Scope of Review

The interpretation of a written instrument is solely a question of law unless the meaning turns on a question of fact. In that case, a review of the facts is subject to the substantial evidence rule and if the evidence is in conflict we are directed to decide on the basis of the inference or inferences that support the trial court. (*Parsons v. Bristol Development Co*. (1965) 62 Cal.2d 861.) We proceed on that basis.

8

B. The Easement

Tahoe Truckee has an express easement created by a reservation in a grant deed. The reservation provides for "an easement for ingress, egress, parking, storage, utilities over a portion of Parcel One . . . , lying Easterly of the Northerly prolongation of the Westerly line of the land conveyed to Bud L. Shaffer, et ux., by deed recorded September 28, 1971 in Book 1374 at Page 361."[4]

The trial court ruled that the portion referred to is the area shown on a survey map prepared by plaintiffs (appendix A, *post,* p. 14) for submission to the Tahoe Area Regional Planning Agency. The map describes the area as subject to an "easement for parking, ingress, egress, utilities and storage, in favor of Kings Beach . . . ," the exact terms of the easement, and shows both a paved area and an unpaved area. The evidence shows that historically only the paved area, and a small portion of the unpaved area, was used for the parking of garbage trucks and the storage of garbage bins. The trial court concluded that: "The testimony, photographs and documentary evidence adduced at trial all combine to establish that from 1995 to 2004 [Tahoe Truckee] essentially confined its use of the easement area to the paved area."

The trial court ruled that " '[w]hen the instrument of conveyance grants an easement in general terms, without specifying or limiting the extent of its use, the permissible use is determined in the first instance by the intention of the parties and the purpose of the grant. *Once the easement has been used for a reasonable time, the extent of its use is established by the past use*.' (6 Miller [&] Starr, Cal. Real Estate (3d ed. [2006]) § 15:56, [p. 186, fns. omitted,] emphasis added.) 'Once the extent of an easement's use has been established, the easement owner cannot subsequently enlarge its character so as to materially increase the burden on the servient tenement.' ([*Id.*,] . . .

---

[4] The parties tender no issues concerning ingress, egress, or utilities.

9

§ 15:54[, p. 176, fn. omitted].)"  This means that the trial court did not find that the express terms of the easement determined the extent of the use of the easement.

"Where the easement is founded upon a grant . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee." (*Pasadena v. California-Michigan Land & Water Co*. (1941) 17 Cal.2d 576, 579 (*Pasadena*); Civ. Code § 806 ["The extent of a servitude is determined by the terms of the grant"].)  The easement provides in general terms "for ingress, egress, parking, storage, utilities over a portion of Parcel One . . . ."  The defendant argues that, "[m]easured by its language alone, [Tahoe Truckee] was entitled to park and store equipment within all areas of the easement, for the simple reason that the instrument creating the easement expressly and unambiguously said so."  We do not agree**.**

While the area subject to the easement is specified, the extent and location of the parking and storage on the easement is not.  The easement in general language provides only that parking and storage may occur "over," meaning, as to parking and storage, "in" the easement area.[5]  It does not specify that all of the area is subject to the easement.  For that reason the precise area of use must be inferred from the intention of the parties. (Civ. Code, § 806.)  " '[S]ection 806 of the Civil Code . . . establishe[s] intent as the criterion for determining the "extent of a servitude," and this is in accord with the rationale of the rules governing easements by implication.' "  (*Camp Meeker Water System, Inc. v. Public Utilities Com.* (1990) 51 Cal.3d 845, 867.)  "This rule necessarily applies to express easements when the extent of the easement is in question."  (*Ibid.*)  In that case the extent of the servitude includes "such uses as the parties might reasonably have expected from the future uses of the dominant tenement.  What the parties might

---

[5]  Similarly, the easement speaks of ingress and egress to Parcel One but does not say where or to what extent.

10

reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance." (*Id.* at pp. 866-867.)

If the defendant were correct that it had a right to use all of the area subject to the easement, it could effectively preclude the plaintiffs from any effective use of the servient tenement by its choice of location for parking and storage, thereby creating an exclusive easement. An exclusive easement is the right of the holder of the easement to exclude everyone, including the servient owner, from use of the land within the easement boundaries. (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1024.) But an exclusive easement cannot be inferred from general language. "No intention to convey such a complete interest can be imputed to the owner of the servient tenement in the absence of a clear indication of such an intention." (*Pasadena*, *supra*, 17 Cal.2d at pp. 578-579.) *Pasadena* concerned an easement that specified the width and location of a road easement. But, the court said "a specification of width and location does not always determine the extent of the burden imposed upon the servient land." (*Id.* at p. 581.)

In this case, there is no clear indication of an intention to extend parking and storage to all of the area subject to the easement. The only testimony to that effect, by Silvano Achiro, was not admitted in evidence by the trial court. The only evidence of the intention of the parties regarding the use of the easement is past usage and that was confined to the paved area and a portion of the unpaved area of the easement. That usage was essentially uniform from 1996 to 2004 (and impliedly before), when Bushwhackers lost its right to do business on the property. The trial court found that "[t]he evidence establishes that, historically, [Tahoe Truckee] used only the paved area for storage of dumpsters or bins."

This case is analogous to *Wilson v. Abrams* (1969) 1 Cal.App.3d 1030 (*Wilson*). *Wilson* involved a "non-exclusive easement for the benefit of . . . [a shopping center] for roadways, walkways, ingress and egress, public utilities, and motor vehicle parking, over . . . [a] portion of Wilsons Property[,]" language similar to the easement in this case.

11

(*Id.* at pp. 1033-1034.) The court found that this language alone did not express the extent of motor vehicle parking on the servient tenement. (*Id.* at p. 1035.) What did show the extent was a map, incorporated in the easement document, that showed the location of "individual parking stalls, light stanchions, and areas of ingress and egress" on the servient tenement. (*Ibid.*) On that basis the court construed the easement to include only the uses diagramed on the map. (*Ibid.*)

C. The Lease

The trial court found that Tahoe Truckee "never intended to perform any lease obligations . . . and that it did not use the claimed lease area for significant periods of time." It found that "[t]he conduct of [Tahoe Truckee], both before and after this dispute began, consistently demonstrated its intent to ignore and abandon whatever lease rights it claims exist under the lease entered decades before by its predecessors, and which lease was never performed by [Tahoe Truckee] or its predecessors." "Under all [the] circumstances, the court finds it reasonable that Rye did not undertake efforts to inquire further as to the existence or effect of the lease which defendants now claim to be valid."

Tahoe Truckee advances two arguments in response. First, it claims the lease area had been partially occupied since its creation and that an intent to abandon cannot be drawn from such an occupation. Second, it claims that the lease was simply not used for 22 years and that an intent to abandon cannot be drawn from mere disuse. We disagree.

" 'Although it has been said that the lessee of a term may abandon the lease by words or equivalent acts, a surrender cannot be implied by operation of law when the tenant retains possession, *as tenant*, of the leased premises, or any material portion of them.' " (*Pickens v. Johnson* (1951) 107 Cal.App.2d 778, 788, italics added.) In this case the leased area was never used by Tahoe Truckee, under a claim of right as a tenant under color of the lease, for the entire period from its inception until 2004 when the servient tenement was purchased by the Ryes. The fact that a portion of the property was

12

used under color of the easement is not evidence that the property was used under color of the lease.

As to disuse, although the evidence shows that some employees of Tahoe Truckee were unaware of the lease, the lease was signed in 1982 by Silvano Achiro, on behalf of Kings Beach (Tahoe Truckee), and the original of the lease (exhibit 57) was found in the files of Tahoe Truckee in 2008. As the trial court found, for twenty two years, until the purchase by the Ryes, Tahoe Truckee paid no taxes on the property, as required by the terms of the lease, and was " 'entirely indifferent as to what may become of it or as to who may thereafter possess it.' " (*Martin v. Cassidy* (1957) 149 Cal.App.2d 106, 110.) The trial court found that this showed a manifest indifference to the existence of the lease and permitted the inference that the lease was abandoned and not merely disused.

### DISPOSITION

The judgment limiting the plaintiffs to the historic uses of the easement is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

      BLEASE      , J.

We concur:

      RAYE      , P. J.

      NICHOLSON      , J.

13



Appendix B



15