Filed 6/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VISITACION INVESTMENT, LLC, <br><br>     Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> 424 JESSIE HISTORIC PROPERTIES, LLC, <br><br>     Defendant, Cross-complainant and Respondent. | A163550 <br><br> (San Francisco <br> Super. Ct. No. CGC-19579667) |

Appellant Visitacion Investment, LLC (Visitacion) owns a large plot of land in San Francisco. A portion of the land is subject to an easement reserved when a railroad sold that portion to Visitacion's predecessor-in-interest. The dominant tenement of the easement, a plot of land adjacent to Visitacion's property, is now owned by respondent 424 Jessie Historic Properties, LLC (JHP). In preparing to develop its property, Visitacion brought this action to quiet title to the easement on grounds of abandonment.

Visitacion and JHP filed cross-motions for summary judgment. The trial court found no material triable issues of fact and rendered judgment in favor of JHP, holding there had been no abandonment as a matter of law.

1

Concluding that disputed issues of fact preclude any definitive finding on the issue of abandonment, we reverse the grant of summary judgment to JHP.[1]

## BACKGROUND

### I.

### *General Factual Background*

Visitacion owns a plot of land in the Visitacion Valley neighborhood of San Francisco (Visitacion property).  A portion of the Visitacion property (servient parcel) was formerly owned by the Southern Pacific Transportation Company (Southern Pacific).  The servient parcel was bounded on the east by the right-of-way for a series of mainline railroad tracks that are still in active use.

When Southern Pacific conveyed the servient parcel to Visitacion's predecessor-in-interest in 1990, Southern Pacific was conducting railroad-related business operations on a parcel across the northern border of the servient parcel.  In support of these operations, the deed of conveyance reserved an easement with respect to several separately described portions of the servient parcel (the easement).  As relevant here, the easement encumbered a strip of land curving diagonally across the servient parcel from its northeast corner, which was bordered to the north by the Southern Pacific parcel and to the east by the railroad right-of-way.  Southern Pacific's parcel became the dominant tenement of the easement.[2]

---

[1] Visitacion does not appear to appeal the trial court's denial of its own motion for summary judgment.  We nonetheless briefly address the issue and find no error in the denial.

[2] An easement is an incorporeal interest in the land of another that gives its owner the right to use another's property.  The land to which the easement attaches is called the dominant tenement; the land on which the burden is imposed is called the servient tenement.  (*Tract Development Services, Inc. v. Kepler* (1988) 199 Cal.App.3d 1374, 1384.)

Southern Pacific merged with the Union Pacific Railroad (Union Pacific) in 1997. At some point, railroad activities on the dominant tenement ceased, although the date of cessation is unclear from the appellate record. In 2015, Union Pacific sold the dominant tenement and an adjacent parcel (together, JHP property) to the predecessor-in-interest of JHP.[3] As part of the sale, Union Pacific expressly conveyed to JHP its rights under the easement in the diagonal strip described above, although the deed contained no warranty regarding the continued existence of such rights.

Visitacion is planning a large, mixed-use residential development on the Visitacion property. As part of that development, Visitacion hopes to use the portion of its land that was encumbered by the easement. To that end, Visitacion brought this quiet title action against JHP, alleging that the easement has been extinguished under the doctrine of abandonment. JHP responded with a cross-complaint, denying abandonment and seeking to establish its "full and complete legal and equitable ownership of the . . . easements."

Following discovery, the parties filed cross-motions for summary judgment on the issue of abandonment.

## II.
### *Evidence of Abandonment*

Visitacion's claim of abandonment is premised on the cessation of railroad activities on the JHP property and its sale to JHP, a real estate development company with no proven intent to use the easement for railroad purposes.

---

[3] JHP's predecessor-in-interest, Patrick McNerney, is still involved with JHP's activities. For convenience, we will hereafter refer to McNerney and JHP jointly as "JHP."

In relevant part, the easement, as set forth in the deed by which Southern Pacific conveyed the Visitation property to Visitation's predecessor, was described as follows, with critical language bolded:

"FORM OF RAILROAD EASEMENT

"Grantor excepts from the Property hereby conveyed and reserves unto itself, its successors and assigns:

"A perpetual, exclusive easement in, on, under, over and through the locations described in Schedule l (Railroad Main Line Easement), Schedule 2 (Drill & Spur Track Easement), and Schedule 3 (Access Roadway Easement) attached hereto, **in which areas Grantor . . . shall have the right to own, operate, maintain, repair, lease, license, and/or remove existing and/or future railroad, rail and railroad related equipment and facilities and communications lines and facilities of every kind and nature including but not limited to all existing facilities, telephone, telegraph, television and fiber optic lines and related equipment**. . . . Upon abandonment or termination of the easement, or any portion thereof, Grantor shall be obligated to execute and deliver to Grantee or its successors and assigns an instrument in form and substance satisfactory to Grantee, or its successors and assigns, relinquishing the easement described in this paragraph."  (Bolding added.)

The three schedules referred to in the easement deed describe seven separate encumbered parcels, two referred to as "Main Line Easement," three referred to as "Drill & Spur Track Easement," and two referred to as "Access Roadway Easement."

The quitclaim deed by which Union Pacific conveyed the JHP property included the easement rights to four of the seven parcels described in the original deed schedules:  one of the main line parcels, designated in the

4

quitclaim deed as the "signal cabinet area," two of the drill & spur track parcels, and one of the access roadway parcels. Easements over the parcels relating to operation of the mainline right-of-way were not included in the rights conveyed to JHP. To the contrary, the quitclaim deed required JHP to construct a fence preventing access to the railroad right of way.

Visitacion provided little information about the easement's use over the more than 30 years since its creation, perhaps because such information is no longer available. Because a portion of the Visitacion property formerly hosted a factory, Visitacion reasonably speculates that a spur track in the easement could have served the factory, connecting it to the mainline tracks that run to the east.

The tracks and other rail-related equipment in the easement were removed no later than 2008.[4] Although the easement permitted its use for communications equipment, there were no records indicating that Southern Pacific or Union Pacific had ever placed such equipment in the easement. By the time of this litigation, there was no railroad or communications equipment in the easement.

Union Pacific sold the JHP property only after determining that the property qualified as "excess property," meaning that Union Pacific no longer used it for "operating railroad purposes." Further, prior to the sale, Union Pacific conducted a "very formal and extensive" internal review confirming that none of a dozen different Union Pacific departments had a further use for the JHP property or the easement. At the time of the sale, Union Pacific

---

[4] Although the record leaves the date of removal uncertain, a Visitacion declarant stated that "since I first visited the [servient parcel] in 2008 I have not seen any rail or railroad related equipment or facilities in the Easements," except for "two or three" deteriorated sheds that were later removed.

5

understood that JHP intended to use the JHP property for residential or commercial development. JHP and Union Pacific discussed use of the easement for vehicular and pedestrian access to the JHP property, rather than for railroad-related activities. JHP has since submitted a proposal to the City of San Francisco for the construction of two new residential buildings on the JHP property.

## III.

### *JHP's Evidence*

JHP argued that the easement had not been abandoned because it continues to allow vehicular and pedestrian access to the JHP property and can be used for the installation of communications equipment or for activities associated with the active mainline rail service on its eastern boundary.

Without denying its exploration of the construction of buildings on the JHP property, JHP provided evidence that the JHP property is zoned to allow a variety of activities authorized under the easement, including activities associated with the mainline tracks or other "freight storage or transfer, loading and unloading of rail cars, and railroad maintenance, construction or repair" and a data center or other telecommunication facilities. Since JHP acquired the property, it has licensed its temporary use to a railroad maintenance and construction contractor working on a railroad electrification project for CalTrain. Further, JHP argued, use of the easement for an access roadway and the installation of communications lines will be necessary for any future development on the JHP property. Because, JHP contended, such uses are authorized under the easement, it cannot be found to have been abandoned.

6

# IV.

## *The Trial Court's Ruling*

The trial court denied Visitacion's motion for summary judgment and granted JHP's motion. In granting judgment, the trial court was persuaded that the scope of the easement extends beyond railroad-related activities, citing the broad language relating to communications equipment and the testimony of a former Southern Pacific employee that the company's business at one time included the installation of commercial fiber optic cables in some of its railroad rights-of-way. The court rejected Visitacion's claim that Union Pacific's conduct evidenced an intent to abandon the easement, relying on evidence that (1) the railroad "actively marketed the [JHP] property," (2) JHP had entered into agreements with Visitacion in 2016 and the construction company in 2019 granting access to the JHP property, and (3) the JHP property would be "effectively landlocked" without access over the easement.

## DISCUSSION

As explained below, we conclude that the trial court erred in granting summary judgment to JHP for three independent reasons. First, resolution of this matter will likely turn on the interpretation of the easement deed. Although that interpretation is ultimately an issue of law for the court, the trial court erred in construing the easement in the context of the summary judgment motions, given the ambiguity in the language of the deed and the conflicting evidence regarding the context and use of the easement. Second, the evidence submitted by Visitacion could, if accepted by the trier of fact, support a finding of abandonment, notwithstanding the contrary evidence submitted by JHP. It therefore creates triable issues of fact that preclude summary judgment. Finally, the trial court's finding that, as a matter of law,

7

Union Pacific did not intend to abandon the easement was based on a misunderstanding of the law governing such intent.[5]

## I.

### *Governing Law*

#### A. Abandonment

Abandonment of an easement created by grant, as here, requires proof of (1) the cessation of use of the easement by the owner of the dominant tenement and (2) " ' "unequivocal and decisive acts on the part of the [dominant tenant], clearly showing an intention to abandon." ' " (*Gerhard v. Stephens* (1968) 68 Cal.2d 864, 890 (*Gerhard*); *Smith v. Worn* (1892) 93 Cal. 206, 212.)[6] An easement that is found to be abandoned "does not 'revert' to the grantor[;] it is simply extinguished." (*Concord & Bay Point Land Co. v. City of Concord* (1991) 229 Cal.App.3d 289, 295.)

Abandonment, and in particular the intent to abandon, are issues of fact. (*People v. Ocean Shore Railroad, Inc.* (1948) 32 Cal.2d 406, 417; *Buechner v. Jonas* (1964) 228 Cal.App.2d 127, 131.) With respect to this inquiry, California has adopted the view of the original Restatement of

---

[5] The parties raise several arguments that we find unnecessary to address, such as the trial court's rulings on Visitacion's objections to the admission of the deposition testimony of Union Pacific's designated corporate representative. We decline to address these issues because triable issues of fact would preclude summary judgment, regardless of the correctness of the trial court's rulings. We do not mean to express an opinion about any issues other than those expressly addressed below.

[6] Some older decisions hold that a finding of abandonment also requires proof of acts taken by the owner of the servient tenement in reliance on the abandonment. (E.g., *Smith v. Worn, supra,* 93 Cal. at p. 212.) More recent decisions have persuasively rejected that element. (See *Gerhard, supra,* 68 Cal.2d at p. 890 [not mentioning reliance element]; *Lake Merced Golf & Country Club v. Ocean Shore R.R. Co.* (1962) 206 Cal.App.2d 421, 436–437 [explaining rejection of reliance element].)

Property that " '[t]he intention required in the abandonment of an easement is the intention not to make in the future the uses authorized by it. The benefit of an easement lies in the privilege of use of the land subject to it. There is no abandonment unless there is a giving up of that use.' " (*Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 363 (*Faus*); see similarly *Tract Development Services, Inc. v. Kepler, supra,* 199 Cal.App.3d at p. 1385 ["Abandonment hinges upon the intent of the owner to forego all future conforming uses of the property"]; *Ocean Shore*, at p. 418 [trier of fact must "determine whether there was a bona fide intent to preserve the right of way for actual railroad use"].) Although mere nonuse is insufficient to demonstrate an intent to abandon, a long period of nonuse may be considered as evidence of the necessary intent. (*Gerhard*, *supra*, 68 Cal.2d at p. 891.)

In determining the "conforming" or "authorized" uses of an easement, the touchstone is the language of the document creating the easement.[7] (Civ. Code, § 806 ["The extent of a servitude is determined by the terms of the grant"].) "Deeds are interpreted in the same manner as contracts. [Citation.] . . . In interpreting a deed, our primary objective is to determine and carry out the intent of the parties by looking at the deed's plain language, 'as construed in light of any extrinsic evidence which may prove a meaning [of] which the language of the instrument is reasonably susceptible.' " (*Pear v. City and County of San Francisco* (2021) 67 Cal.App.5th 61, 70.) In determining the uses permitted by an easement, the court must also consider the " 'purpose and character' " of the easement (*Langazo v. San Joaquin*

---

[7] Civil Code section 806 refers to an easement created by grant, but the same rule applies to an easement created by reservation. (*City of Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 542.)

9

*Light & Power Corp.* (1939) 32 Cal.App.2d 678, 686 and its historic use (see *Atchison, T. & S.F. Ry. Co. v. Abar* (1969) 275 Cal.App.2d 456, 465 (*Abar*)).

The terms of the easement constrain the uses permitted to the dominant tenement. " 'Where the easement is founded upon a grant . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee.' " (*Rye v. Tahoe Truckee Sierra Disposal Co., Inc.* (2013) 222 Cal.App.4th 84, 92 (*Rye*).) "[I]t is well settled that 'both parties have the right to insist that so long as the easement is enjoyed it shall remain substantially the same as it was at the time the right accrued, entirely regardless of the question as to the relative benefit and damage that would ensue to the parties by reason of a change in the mode and manner of its enjoyment.' " (*Whalen v. Ruiz* (1953) 40 Cal.2d 294, 302.)

**B. Summary Judgment**

"The standard pursuant to which we review an appeal from an entry of summary judgment is well established. We summarized it in *Nazir v. United Airlines Inc.* (2009) 178 Cal.App.4th 243 (*Nazir*), as follows:

" 'Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] As applicable here, moving defendants can meet their burden by demonstrating that "a cause of action has no merit," which they can do by showing that "[o]ne or more elements of the cause of action cannot be separately established . . . ." [Citations.] Once defendants meet this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact. [Citation.]

" 'On appeal "[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute

10

warrant judgment for the moving party as a matter of law. [Citations.]"
[Citation.] Put another way, we exercise our independent judgment, and
decide whether undisputed facts have been established that negate plaintiff's
claims. [Citation.] . . . "[W]e exercise an independent review to determine if
the defendant moving for summary judgment met its burden of establishing a
complete defense or of negating each of the plaintiff's theories and
establishing that the action was without merit." [Citation.]

" 'But other principles guide us as well, including that "[w]e accept as
true the facts . . . in the evidence of the party opposing summary judgment
and the reasonable inferences that can be drawn from them." [Citation.]
And we must " 'view the evidence in the light most favorable to . . . the losing
part[y]' and 'liberally construe [his] evidentiary submissions and strictly
scrutinize [the moving party's] own evidence, in order to resolve any
evidentiary doubts or ambiguities in [the losing party's] favor.' " ' " (*Wright v.
State of California* (2015) 233 Cal.App. 1218, 1228.)

## II.

### *The Trial Court Erred in Interpreting the Deed Reserving the Easement on Summary Judgment.*

As discussed below, we accept JHP's argument that a sale by Union
Pacific to a party that intended to make authorized use of the easement could
weigh against a finding of abandonment. JHP contends that its purchase
qualified as such because any anticipated development on the JHP property
would use the easement for (1) vehicular and pedestrian access to the
buildings and (2) the installation of communications equipment serving the
buildings. Although the trial court's order did not expressly address whether
use of the easement to provide access to a commercial or residential
development is authorized under the easement, it did construe the easement
to permit the installation of any type of communications equipment,

11

implicitly rejecting Visitacion's argument that the installation of such equipment is not an authorized use unless the equipment is related to railroad operations. We conclude that the trial court's interpretation of the easement deed on summary judgment was premature.

"When the terms of an insurance policy are clear and unambiguous, the interpretation of the policy presents an issue of law which may be resolved by summary judgment. [Citation.] However, when the terms of a contract are ambiguous or uncertain, 'it is the duty of the trial court to construe it after the parties are given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding its execution as well as the conduct of the parties to the contract [citation],' and the interpretation of the policy presents a question of fact which is inappropriate for summary judgment." (*Rogers v. Prudential Insurance Co.* (1990) 218 Cal.App.3d 1132, 1136–1137.) Although *Rogers* specifically addressed an insurance policy, the same rule of law applies to the interpretation of any ambiguous contract. (*Daugherty Co. v. Kimberly-Clark Corp.* (1971) 14 Cal.App.3d 151, 157.)

There is little question that the terms of the deed containing the easement are ambiguous. The easement is referred to as a "railroad easement," but its authorized uses include the installation of communications equipment as well as railroad equipment. Further, the deed's descriptions of the various tracts subject to the easement refer specifically to the creation of a "drill & spur track" and an "access roadway." Based on this language, Visitacion and JHP posit reasonable but conflicting interpretations, with Visitacion contending the easement permits only railroad-related uses (including railroad-related communications and access) and JHP arguing that any use for the purposes of communications and access is authorized.

12

Determining the proper weight to be given the various provisions in the easement bearing on its use will require consideration not only of the language of the easement, but also its " 'purpose and character' " (*Langazo v. San Joaquin Light & Power Corp.*, *supra*, 32 Cal.App.2d at p. 686), its historic use (see *Abar*, *supra*, 275 Cal.App.2d at p. 465), and any other evidence bearing on the original parties' intent. "[E]vidence showing the conduct of the parties and the practical construction placed on [the easement] by them . . . afforded the most reliable means of ascertaining the intention of the parties." (*City of Los Angeles v. Savage* (1958) 165 Cal.App.2d 1, 7.)

The trial court's interpretation was based largely on the language of the easement deed, with little consideration of the circumstances of its creation or the original parties' use of the easement. Although the trial court was correct that the deed's language authorizing the installation of communications equipment is broad, that language is potentially subject to limitation by other provisions of the easement deed and the history of its use. The deed is entitled "Railroad Easement," arguably suggesting that the parties intended the easement to be used solely for railroad purposes. Further, one of the easement parcels transferred to JHP was described as a "signal cabinet area" in the quitclaim deed, suggesting it had been used for communications related to the railroad's operations.[8] The original parties could have chosen to use broad language to describe the allowable communications equipment simply to accommodate changing technology for

---

[8] The original easement deed referred collectively to two of the parcels over which an easement was granted as "Main Line Easement." In the quitclaim deed transferring the second of these parcels to JHP, it is referred to as "signal cabinet area." This suggests that Union Pacific had reason to believe the parcel was used for installation of a signal cabinet, a term of art used to refer to a structure housing electronics involved in the operation of the railroad.

railroad communications, rather than to permit the installation of equipment serving other communications purposes.

In adopting a broader interpretation, the trial court relied on evidence that Southern Pacific had, at one time, installed fiber optic cable in some easements at other, unspecified locations. That type of use might have been appropriate for the easement parcels relating to operation of the mainline tracks, since those parcels are presumably part of a railroad right-of-way connecting distant locations. It seems unlikely that the parties anticipated a similar use for the easement parcels transferred to JHP because those easements merely cross the servient parcel, terminating at the property line.

In presenting these arguments, we do not mean to suggest that any of them is conclusive in the interpretation of the easement deed. We simply note that the issue is more complex, and more dependent on the evidence of the historical background, than is suggested by the trial court's analysis of the deed's language. Given the ambiguity of the easement deed and the uncertain state of the evidence bearing on its origination and use, the trial court erred in construing the deed in the context of these cross-motions for summary judgment.

## III.

### *Visitation's Evidence, if Accepted, Could Support a Finding of Abandonment.*

The trial court's decision did not address the evidence submitted by Visitacion in support of its contention that Union Pacific had abandoned the easement. Because that evidence was sufficient, under long-established case law, to support a finding by a trier of fact that the easement was abandoned, Visitacion's submission created triable issues of fact precluding a grant of summary judgment to JHP.

14

Visitacion's evidence, which was largely uncontradicted, demonstrated that all of Union Pacific's easement-related activities on the servient parcel ceased several years prior to the sale to JHP. All tracks, buildings, and other equipment necessary for use of the properties for railroad purposes had been removed, and there was no evidence that communications equipment had ever been present in the easement, other than, perhaps, a signal cabinet. Before selling the property, Union Pacific determined that it was no longer using the dominant tenement or the easement for operating railroad purposes and conducted an extensive internal review confirming that no department of the railroad had a further use for them. It was only after this period of nonuse and Union Pacific's determination that it had no further use for the property that Union Pacific marketed the JHP property.

On this evidence, a trier of fact could conclude that Union Pacific, prior to the sale to JHP, had formed an intent " 'not to make in the future the uses authorized by' " the easement. (*Faus*, *supra*, 67 Cal.2d at p. 363.) A reasonable inference of such intent could be made from the removal of all conforming equipment and the significant period of nonuse, which the internal review confirmed. Similar evidence has repeatedly been found sufficient to support a finding of abandonment of a railroad easement in California and other jurisdictions. (E.g., *People v. Ocean Shore Railroad, Inc., supra,* 32 Cal.2d at pp. 415–419; *Home Real Estate Co. v. Los Angeles Pacific Co.* (1912) 163 Cal. 710, 714–716; *Lake Merced Golf & Country Club v. Ocean Shore R.R. Co., supra,* 206 Cal.App.2d at pp. 438–442; *Ocean Shore R.R. Co. v. Doelger* (1960) 179 Cal.App.2d 222, 229 (*Doelger*); see also *Brewster and Taylor Co. v. Wall* (1989) 299 Ark. 18 [769 S.W.2d 753, 756] [railroad easement abandoned when railroad ceased operations and conveyed the easement for non-railroad use]; *Lawson v. State* (1986) 107 Wash.2d 444

[730 P.2d 1308, 1313] [same]; *Schnabel v. County of DuPage* (1981) 101 Ill.App.3d 553, 57 Ill.Dec. 121 [428 N.E.2d 671, 678–679] [same]; *Pollnow v. State Dept. of Natural Resources* (1979) 88 Wis.2d 350 [276 N.W.2d 738, 746] [same].)

JHP's argument for non-abandonment is largely premised on its interpretation of the easement as authorizing a wider variety of uses than a typical railroad easement. As explained above, we hold that a definitive interpretation of the easement cannot be made on summary judgment. Further and in any event, JHP's arguments about the interpretation of the easement are also largely irrelevant, given Union Pacific's conduct prior to its sale of the property. Union Pacific had ceased railroad-related uses of the easement, could find no records that it had ever taken advantage of communications or access uses beyond those necessary for railroad operations, and determined that it had no intent to make other authorized uses of the easement. Even if the easement permitted non-railroad uses, Union Pacific could be found to have formed an intent not to take advantage of them. For this reason, Visitacion's evidence necessarily created triable issues of fact that prevented a grant of summary judgment to JHP.

Although Visitacion's evidence is sufficient to support a finding of abandonment, it did not demonstrate an entitlement to summary judgment. As we have noted, abandonment, and in particular intent to abandon, are issues of fact. Issues of intent in this context as in others often turn on circumstantial evidence and inferences that, when conflicting, are not amenable to summary judgment. (Code Civ. Proc. §437c, subd. (c) ["summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact"].)

16

Further, although a trier of fact could find abandonment on Visitacion's evidence, that finding is not compelled as a matter of law. A judge or jury could also conclude that Union Pacific's conduct was neither unequivocal nor decisive in demonstrating an intent to forgo all further authorized uses of the easement. (*Gerhard, supra*, 68 Cal.2d at p. 890.) In addition, JHP provided evidence that could be found to refute an intent to abandon. We assume that sale of the JHP property by Union Pacific to a buyer who intended to make authorized use of the easement could constitute evidence that Union Pacific lacked the intent to abandon. Although JHP's claim that it intends to make such use of the easement will depend on subsequent interpretation of the easement, JHP's evidence is sufficient at this stage of the proceedings to create a triable issue of fact that precluded a grant of summary judgment for Visitacion.

## IV.

### *The Trial Court's Finding That Union Pacific Lacked the Intent to Abandon as a Matter of Law Was Based on a Misunderstanding of the Legal Standard.*

The trial court's conclusion that, as a matter of law, Union Pacific lacked the intent to abandon appears to have been based on a misunderstanding of the law governing such intent. The court did not expressly identify the legal standard it applied in finding no intent to abandon, but it reasoned that Union Pacific could not be found to have intended to abandon the easement because it "actively marketed" the easement as part of the JHP property.[9] Although this suggests that Union

---

[9] The trial court also cited as evidence of no intent to abandon JHP's licensing of access to the property after it purchased the JHP property. Although that licensing may support a finding that JHP has not abandoned the easement, it does not bear on Union Pacific's intent (or its conduct) before or at the time of the sale.

Pacific did not intend to voluntarily *relinquish* the easement at the time of the sale to JHP, the intent to abandon an easement does not require or depend upon an intent to relinquish it.

" 'The intention required in the abandonment of an easement is the intention not to make in the future the uses authorized by it.' " (*Faus, supra*, 67 Cal.2d at p. 363.) As this suggests, abandonment occurs when an owner no longer intends to engage in the uses authorized by the easement; it does not require a subjective intent to give up the easement. (See *Doelger, supra*, 179 Cal.App.2d at p. 232 ["The intent to abandon congeals into the relinquishment of the purpose for which the easement has been conveyed, and this renunciation works a termination of the easement. [Citations.] Nor will a desire to utilize the property for other purposes prevent such extinguishment"].) In part because it does not depend upon subjective intent, intent to abandon is generally inferred from the owner's conduct, rather than premised on direct evidence of intent.

As the Restatement of Property explains, a finding of abandonment is normally based on circumstantial evidence because the owner of a dominant tenement who "deliberately sets about divesting him or herself" of an easement "normally uses a release." (Rest. 3d Property, Servitudes, § 7.4, com. a, p. 352.) Even when the owner of a dominant tenement no longer intends to exercise the rights granted under the easement, the owner may be unwilling to voluntarily relinquish the easement because of "the possibility of exacting a payment from the servient owner for its release." (*Id.*, § 7.4, com. c, p. 354.) In such circumstances, "abandonment may be more readily found than if the servitude continues to enhance the utility of the dominant estate." (*Ibid.*) In other words, a finding of intent to abandon is appropriate when the uses authorized by the easement have no further practical value to

18

the dominant tenement. Abandonment can then occur even though the easement continues to have economic value, if only by virtue of the burden it imposes on the servient tenement. Although Union Pacific's marketing of the JHP property with the easement demonstrates that the railroad did not intend to relinquish the easement, it has little bearing on Union Pacific's intent to abandon.

Cases in other jurisdictions have consistently found an intent to abandon a railroad easement, notwithstanding the railroad's subjective intent, when the railroad ceases operations in the easement and conveys the property to a buyer who does not intend to use the easement for authorized purposes. (E.g., *Brewster and Taylor v. Wall, supra*, 769 S.W.2d at p. 756; *Lawson v. State, supra*, 730 P.2d at p. 1313; *Schnabel v. County of DuPage, supra*, 428 N.E.2d at pp. 678–679; *Pollnow v. State Dept. of Natural Resources, supra*, 276 N.W.2d at p. 746.) One California court has similarly cited the sale of portions of a railroad right-of-way to non-railroad users as evidence of abandonment. (*Doelger, supra*, 179 Cal.App.2d at pp. 229, 232.)

The trial court separately justified its finding of no intent to abandon on the ground that the JHP property would be "effectively" landlocked without access over the easement. Visitacion presented evidence refuting JHP's claim that the property would be landlocked without access through the easement, including the admission by a JHP witness that the easement is merely "currently the most economically feasible access to the JHP property." The issue whether the property was landlocked thus presented a triable issue of disputed fact, and the court erred in premising a grant of summary judgment on JHP's claim. Further, although the landlocked nature of the parcel might justify a finding of an easement by necessity (see *Murphy v. Burch* (2009) 46 Cal.4th 157, 162–163), an issue the court did not expressly

19

consider, it does not bear on the issue of abandonment.  JHP has presented no authority suggesting that the need for access, standing alone, makes roadway access an authorized use under the easement.  Whether access to the JHP property was an authorized use of the easement or was permitted only to the extent such access was " 'necessarily incident' " to the expressly authorized uses (*Rye, supra,* 222 Cal.App.4th 84, 92), must be resolved by interpretation of the easement.

## DISPOSITION

The trial court's grant of summary judgment to JHP is reversed.  The trial court is directed, on remand, to vacate the judgment and its order of July 15, 2021, granting summary judgment.  Visitacion is awarded its costs on appeal.

_____
STEWART, P.J.

We concur.


_____
RICHMAN, J.


_____
MILLER, J.


*Visitacion Investment, LLC v. 424 Jessie Historic Properties, LLC* (A163550)

Trial Court:     San Francisco County Superior Court

Trial Judge:     Hon. Vedica Puri

Counsel:

Katzoff & Riggs, Kenneth S. Katzoff, Robert R. Riggs, Stephen G. Preonas, for Plaintiff, Cross-defendant and Appellant.


Steyer Lowenthal Boodrookas Alvarez & Smith, Jeffrey H. Lowenthal and Dana M. Andreoli, for Defendant, Cross-complainant and Respondent.