[Civ. No. 33689. Second Dist., Div. One. Nov. 21, 1969.]

GAGE WILSON et al., Plaintiffs and Appellants, v.
PAUL ABRAMS et al., Defendants and Respondents.

■■■■■■■■■■

## COUNSEL

Cummins, White & Breidenbach and W. F. Rylaarsdam for Plaintiffs and Appellants.

Dern & Mason, Melvyn Mason and Herbert Abrams for Defendants and Respondents.

## OPINION

**LILLIE, J.**—In an action for declaratory relief, plaintiffs, as owners of land (the servient tenement) adjoining that of defendants (the dominant tenement), sought to have the court construe a parking lot agreement between the parties so as to permit the construction of an automobile service station on plaintiffs' property. The area comprising the land is part of a retail shopping center in the San Fernando section of Los Angeles. The trial court concluded that under the agreement, which was found to be clear and unambiguous, the use of plaintiffs' parcel for the purposes sought would violate the grant of easement thereunder and the declaration of restrictions contained therein. From such adverse judgment plaintiffs appeal.

The written agreement in question was executed in August 1959 between the parties or their predecessors, Von's Grocery Co. also being a signatory thereto by virtue of a leasehold interest acquired from plaintiffs' predecessors (Mr. and Mrs. Wilson) in 1957. Prior to such lease, the Wilsons owned approximately the eastern half of the present shopping center property; defendants owned approximately the western half. Pursuant to the above lease, in 1960 the Wilsons constructed a grocery store on their half of the shopping center; thereafter, in 1966, they sold their half of the shopping center property to Von's except for a parcel (approximately 119 feet x 125 feet) on the southeast corner. It is this parcel which is the site of the proposed service station.

After reciting that the parties thereto have established a general plan for the maintenance of the property as an integrated shopping center and desire to create (and do create) an automobile parking lot in conjunction therewith, the agreement proceeds to grant reciprocal easements and restrictions. The easement granted by plaintiffs to defendants, and pertinent here, is described as follows: "A non-exclusive easement for the benefit of and appurtenant to George-Abrams[1] Property for roadways, walkways,

---

[1] The "George" therein referred to is George Homes, Inc., the predecessor in interest of defendant Bernard Spiegel.

■■■■■■■

ingress and egress, public utilities, and motor vehicle parking, over, under, and along that portion of Wilsons Property and Von's Leasehold Estate labeled as 'Proposed "PV" Zone' on the plat attached hereto as Exhibit A and incorporated herewith. . . ." The above plat map, while labeling the easterly half of the parking area (that belonging to Wilson and Von's) as the "PV" zone, appropriately designates the westerly half (belonging to defendants) under the lable "PA," the boundaries of which are indicated by bold blue lines and colored shading. An inspection of the map further discloses, as to both halves, the designation by appropriate markings of light stanchions and individual parking stalls, the latter generally covering the entirety of each zone including plaintiffs' southeast corner. Also indicated are the areas of ingress and egress to the parking stalls.

Both sides cite the following comment to section 486, Restatement of Property: "So far as the language of the conveyance creating an easement precisely defines the privileges of the owner of it, the privileges of use of the owner of the servient tenement are also precisely defined. As the precision of definition decreases, the application of the principle that the owner of the easement and the possessor of the servient tenement must be reasonable in the exercise of their respective privileges becomes more pronounced. Under this principle, the privilege of use of the possessor of the servient tenement may vary as the respective needs of himself and the owner of the easement vary." ██ As corollaries to the above are these settled rules: Where an easement under a grant is specific in its terms, "It is decisive of the limits of the easement" (25 Am.Jur.2d, Easements and Licenses, § 73, p. 479, citing *Winslow* v. *City of Vallejo,* 148 Cal. 723 [84 P. 191, 113 Am.St.Rep. 349, 7 Ann.Cas. 851, 5 L.R.A. N.S. 851], which in turn (p. 725) quotes the language of section 806, Civil Code);[2] if the easement is not specifically defined, "It need only be such as is reasonably necessary and convenient for the purpose for which it was created" (*ibid.,* citing *Pasadena* v. *California-Michigan etc. Co.,* 17 Cal.2d 576, 582 [110 P.2d 983, 133 A.L.R. 1186]) and it was accordingly there held that "the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." (P. 579.)

██ This brings us to plaintiffs' first point, that the burden imposed by the easement is described in general terms and, accordingly, its scope should be determined by the reasonable needs of the parties. According to plaintiffs, the agreement is devoid of any language specifically setting forth the number of vehicles which defendants could rightfully park on the servient tenement, nor does it designate any portion of the servient tenement upon which such right could be exercised; too, the instrument is similarly silent as

---

[2]Section 806, Civil Code: "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired."

to the areas of ingress and egress, as well as the locations of roadways and walkways. ■ In this asserted posture of the case, say plaintiffs, it was error for the court to refuse proffered proof from a consulting traffic engineer qualified in such matters that there were 625 marked parking spaces in the parking area, that approximately 54 spaces would be eliminated by the construction of the service station, and that thereafter there would still be a surplus of some 200 parking spaces for its patrons based upon the type of shopping center involved.

■ We do not think that the absence of the above language infects the instrument with the lack of specificity urged. The easement was granted pursuant to a plat map attached to the instrument, and it is settled that easements may be conveyed in such manner (see cases collected in *Douglas v. Lewin,* 131 Cal.App. 159, 162 [20 P.2d 959]). Moreover, designated on such map are markings indicative of individual parking stalls, light stanchions, and areas of ingress and egress. Such designations, in our view, clearly serve to supply the specific language necessary to sustain the finding that the easement thus created was specific and definitive in scope both as to geographical boundaries and the nature and quantity of the burden imposed on the servient tenement. ■ That being the case, the court did not err in refusing to receive extrinsic evidence purporting to show that an additional use by the owners of the servient tenement would be "reasonable." ■ It is well settled that "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. [Citation.] If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Keeler* v. *Haky,* 160 Cal.App.2d 471, 474 [325 P.2d 648].)

■ Too, as defendants properly point out, the proffered testimony did not go to the question of a use consistent with their easement rights as owners of the dominant tenement nor with the issue of an unreasonable interference with such rights; to the contrary, it was premised upon the theory that the agreement covered a parcel of land greater than actually needed for the parking requirements of the shopping center. In essence, as further pointed out, plaintiffs are contending that when defendants bargained for, and acquired rights, under the 1959 agreement, such rights were greater than they needed. ■ But even if the shopping center's patrons never used the full complement of parking stalls granted under the easement, as seems suggested by the above theory, "It is well settled in this state that an easement created by grant is not lost by mere nonuser. [Citations.] By statute the extent of the servitude is determined by the terms of the grant (Civ. Code, § 806), and only servitudes acquired by enjoyment shall be extinguished by disuse (*id.* § 811, subd. 4). For an easement

acquired by grant to be thus lost it must be accomplished with an express or implied intention of abandonment. [Citations.]" (*Haley* v. *Los Angeles County Flood Control Dist.,* 172 Cal.App.2d 285, 290-291 [342 P.2d 476].) Although plaintiffs do not say so, the proffered testimony would seek to reform an instrument clear and explicit in its meaning; this they may not do. The opinion testimony sought from the expert being based on an improper matter, "The court may, and upon objection shall, exclude testimony in the form of an opinion that is based in whole or in significant part on matter that is not a proper basis for such an opinion." (Evid. Code, § 803.)

 The foregoing disposes of the subsidiary point that similar testimony, offered by way of rebuttal to that of a witness for defendants, was erroneously excluded. Defendants' witness, the manager of a theatre in the shopping center, testified that on a particular evening there were a large number of cars parked in the subject area; based thereon, it was his opinion that the construction of a service station would remove parking space for his patrons. Plaintiffs then sought to present testimony, through their own expert, that there would be adequate parking in the area after the construction of the service station to take care of the needs of the theatre. The court, adhering to its previous view that the agreement was sufficiently specific as to geographical limits, ruled that the testimony thus offered would be irrelevant: "If the previous rulings are correct, that the defendants are entitled to—and the public, who patronize the defendants' businesses, are entitled to park in the entire space, then it is not relevant that other space could be provided [in violation of the agreement]." In *Pontecorvo* v. *Clark,* 95 Cal.App. 162 [272 P. 591], the court observed that ordinarily "It is improper to allow witnesses to reiterate the testimony previously given by them in the original case under the guise of rebuttal." (P. 179.) Since the expert witness in the instant matter presumably would have testified to matters theretofore determined by the court to be irrelevant, no good reason appears why the offered testimony should have been received by way of rebuttal.

 Invoking the "rule of practical construction" discussed at length in *Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 752-753 [8 Cal.Rptr. 427, 356 P.2d 171], plaintiffs next contend that the conduct of the parties subsequent to the agreement's execution, is indicative of their intention that the area was not to be used solely for the purposes therein specified. Three instances of such construction, asserted to be fairly inferable in plaintiffs' favor, are cited. First, a shopping center sign was placed on the area subject to plaintiffs' cross-easement by one of the defendants; the scope of this cross-easement being described in language identical to that used in granting the easement herein, the placement of such a sign was not one of the specified

uses therein set forth. It appears, however, that this defendant (Mr. Abrams) first sought the permission of plaintiff Wilson for the sign's erection; it appears, also, that the sign did not take up any parking spaces, it being only about 10 feet wide. Second, plaintiffs assert that defendants constructed a building upon a portion of the area subject to the easement; but an inspection of the plat map does not support such a claim. The parcel in question, outlined in red, and being approximately 7.75 feet by 12 feet, does not lie within either the "PA" or "PV" areas. ■ Third, in 1960 defendants wrote a letter to plaintiffs' predecessors in interest wherein they asked for a written agreement not to build structures on the property. The court sustained an objection to the introduction of this letter, and it was error to do so. For what it was worth in that regard, it tended to show the practical construction placed by the parties on the instrument and, therefore, entitled to considerable weight. (*Don daRoza, Inc.* v. *Northern Cal. etc. Hod Carriers Union,* 233 Cal.App.2d 96, 102 [43 Cal.Rptr. 264].) ■ " 'The acts of the parties under the contract afford one of the most reliable means of arriving at their intention; and, while not conclusive, the construction thus given to a contract by the parties before any controversy has arisen as to its meaning will, when reasonable, be adopted and enforced by the court.' " (*Crestview Cemetery Assn.* v. *Dieden, supra,* 54 Cal.2d 744, 753.)

■ However, plaintiffs do not even suggest that the above error warrants a reversal. Also even if favorable inferences were drawn from the instances above related, they are not "conclusive" (as pointed out in the *Crestview* case) and go only to the weight of the evidence received. In this latter regard, there was ample evidence outweighing the determination sought by plaintiffs. Such contrary evidence shows that the two areas, "PV" and "PA," have at all times been used by the parties as a parking lot for the shopping center; in this regard, even plaintiff Wilson testified that the corner parcel herein was used over the years for parking purposes. There being substantial evidence to support the pertinent findings and conclusions of law, the traditional rule on appeal accordingly governs this portion of the case.

■ As their final point, plaintiffs argue that the asserted denial of their right to make any use of the property (as determined by the court below) is void as violative of public policy. From a practical standpoint, it is pointed out, under the court's judgment they are prevented from ever improving their property which now is of no value to anyone except the defendants to whom they could be almost forced to sell at any nominal sum. Relied on for the above analysis is the following statement of law: "The rule is that every incident of ownership not inconsistent with the easement and the enjoyment of the same, is reserved to the grantor." (*Dierssen* v. *McCormack,* 28

Cal.App.2d 164, 170 [82 P.2d 212].) But the equities are not all one-sided in this case. Plaintiffs do not contend that the agreement was not voluntarily entered into and, it is readily admitted, they were paid $375,000 in 1966 as consideration for the sale to Von's of their portion of the parking area—"PV." Too, the rule quoted in *Dierssen* is not quite applicable here since it assumes that the incident of ownership is *"not inconsistent with the easement."* More applicable is the following from *Whalen* v. *Ruiz,* 40 Cal.2d 294 [253 P.2d 457]: "Section 806 of the Civil Code provides that the extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired; and it is well settled that 'both parties have the right to insist that so long as the easement is enjoyed it shall remain substantially the same as it was at the time the right accrued, entirely regardless of the question as to the relative benefit and damage that would ensue to the parties by reason of a change in the mode and manner of its enjoyment.' [Citations.]" (P. 302).

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied December 17, 1969.