[No. C045417. Third Dist. Jan. 31, 2005.]

SARAH VAN KLOMPENBURG et al., Plaintiffs and Respondents, v.
JOSEPH BERGHOLD et al., Defendants and Appellants.

COUNSEL

Hakeem, Ellis & Marengo and Stephen B. Ardis for Defendants and Appellants.

Michael F. Babitzke for Plaintiffs and Respondents.

OPINION

**MORRISON, J.**—Defendants Joseph Berghold and Kay Berghold appeal from a judgment enjoining them from maintaining gates across a private roadway easement owned by plaintiffs Jon Van Klompenburg, Sarah Van Klompenburg, Barbara Due, Joseph Due and Julie Due. Defendants contend the trial court erred in failing to consider whether the gates unreasonably interfered with plaintiffs' use of the easement. We disagree and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and defendants each own separate parcels of real property located outside Lodi. Defendants' property abuts Highway 12. Plaintiffs' property is located approximately three-fourths of a mile off Highway 12, along the Mokelumne River. Both properties contain vineyards. Defendants' property also contains their residence and other buildings. Plaintiffs lease their property to a farmer; no one resides there. Plaintiffs' property has been in their

family since before 1913. At one time plaintiffs' and defendants' properties were owned by plaintiff John Due's great-grandparents, Peter and Louisa Joens.

The only permanent means of accessing plaintiffs' property is by a private roadway easement stretching across the eastern edge of defendants' property. The easement was conveyed by the Joens in an indenture dated January 9, 1913. Under the terms of the indenture, plaintiffs' predecessors in interest were granted "the right to use, travel over, upon and along, and enjoy as and for a private roadway only, for all time . . . the same to be kept open as a private roadway and wholly unobstructed, . . . [¶] A strip of land Fourteen (14) feet wide," running along the eastern edge of defendants' property. The Joens's intent in conveying this interest was "to furnish to the grantees and to the successors in interest . . . an unobstructed outlet . . . to [Highway 12]."

Defendants purchased the burdened property in 1986. After moving onto the property in 2000, defendants observed trespassers and illegal dumping on their property. In late 2001 and early 2002, defendants experienced three "burglaries" at their property, resulting in substantial losses of personal property. Thereafter, in April or May 2002, defendants installed two locked gates across the easement. There had never been a gate or any other barrier on or across the easement prior to the installation of these gates. Plaintiffs demanded defendants "open"[1] the gates. Defendants unlocked the gates pending the resolution of this case. Defendants offered to leave the gates "open" during periods of intense agricultural activity and to provide plaintiffs and their tenant(s) with keys to the gates.

Plaintiffs initiated this action on November 8, 2002, seeking an order quieting title to the easement and directing defendants to "dismantle and remove" the gates.[2]

After a bench trial, the court issued a statement of decision, ruling in plaintiffs' favor.[3] Relying on the language of the indenture, the court concluded "[d]efendants have no right to maintain closed gates on the easement"

---

[1] It is not clear from the record what is meant by the term "open," i.e., whether it means wide open, unlocked or something else.

[2] Additional claims for relief were later abandoned.

[3] Neither party filed objections to the statement of decision. By failing to do so, defendants did not forfeit their right to bring the instant appeal, as plaintiffs appear to suggest, because defendants challenge an alleged legal error appearing on the statement's face. (*United States Auto. Assn. v. Dalrymple* (1991) 232 Cal.App.3d 182, 186 [283 Cal.Rptr. 330].)

and enjoined defendants from "maintaining" the gates or otherwise interfering with plaintiffs' use of the easement. Defendants appeal contending the trial court erred in "fail[ing] to consider the extent to which the placing of gates constituted an unreasonable interference with plaintiffs' easement."

## DISCUSSION

■ "The trial court's decision to grant a permanent injunction rests within its sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912 [117 Cal.Rptr.2d 631].) ■ The interpretation of an easement, which does not depend upon conflicting extrinsic evidence, is a question of law. (*McCann v. City of Los Angeles* (1978) 79 Cal.App.3d 112, 115, fn. 2 [144 Cal.Rptr. 696], citing *Faus v. City of Los Angeles* (1967) 67 Cal.2d 350, 360 [62 Cal.Rptr. 193, 431 P.2d 849].)

■ Here, the trial court found "the specific language of the easement ('wholly unobstructed') prevail[ed] over the general rule that the owner of the servient tenement[4] may make use of the land that does not interfere unreasonably with the easement." We agree.

■ "It is fundamental that the language of a grant of an easement determines the scope of the easement." (*County of Sacramento v. Pacific Gas & Elec. Co.* (1987) 193 Cal.App.3d 300, 313 [238 Cal.Rptr. 305]; see also Civ. Code, § 806 ["The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired"].) "In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply. If the language is clear and explicit in the conveyance, there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired." (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 [43 Cal.Rptr.2d 810], citing *Wilson v. Abrams* (1969) 1 Cal.App.3d 1030 [82 Cal.Rptr. 272]; and *County of Sacramento v. Pacific Gas & Elec. Co., supra,* 193 Cal.App.3d at p. 313.)

---

[4] "The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." (Civ. Code, § 803.) Here, plaintiffs are the owners of the dominant tenement, and defendants are the owners of the servient tenement.

■ We recognize that " 'unless it is expressly stipulated that the way shall be an open one, or it appears from the terms of the grant or the circumstances that such was the intention, the owner of the servient estate may erect gates across the way, if they are constructed so as not unreasonably to interfere with the right of passage.' " (*McCoy v. Matich* (1954) 128 Cal.App.2d 50, 53 [274 P.2d 714], quoting 73 A.L.R. 779.)[5] However, "[w]here an easement under a grant is specific in its terms, '[i]t is decisive of the limits of the easement' [citations]." (*Wilson v. Abrams, supra,* 1 Cal.App.3d at p. 1034.)

■ Here, the indenture conveying the easement expressly stipulates that the roadway is to be "kept open" and "wholly unobstructed." There is nothing vague or ambiguous about this language. An "obstruction" means "[a] hindrance, obstacle, or barrier. Delay, impeding, hindering." (Black's Law Dict. (6th ed. 1990) p. 1078.) Thus, the trial court was correct in constraining its analysis to the language of the indenture in determining whether defendants were permitted to maintain closed gates across the easement. (*Wilson v. Abrams, supra,* 1 Cal.App.3d at p. 1034.)

The trial court was also correct in interpreting the indenture as prohibiting defendants from maintaining gates across the easement. Except during periods of intense activity (i.e., during the grape harvest), each time plaintiffs, their guests or their agents wish to visit plaintiffs' property, they must stop, get out of their vehicles, open at least one gate, and once through, repeat the process to close the gate. Additionally, plaintiffs' guests and agents who do not have keys will have to make arrangements to obtain them before visiting the property. There is no question that under the circumstances of this case a locked or closed gate constitutes an obstruction in that it delays, impedes and hinders plaintiffs' use and enjoyment of their easement.[6]

---

[5] "[T]he grant of a way without reservation of the right to maintain gates does not necessarily preclude the servient estate owner from having such gates, and unless it is expressly stipulated in the grant that the way shall be an open one, or unless a prohibition of gates is implied from the circumstances, the servient owner may maintain a gate across the way if necessary for the use of the servient estate and if the gate does not unreasonably interfere with the right of passage." (Annot., Right to Maintain Gate or Fence Across Right of Way (1973) 52 A.L.R.3d 9, 15, § 2, and cases cited.)

[6] Contrary to defendants' assertion, the indenture's specification of the roadway as "private" does not support the placement of gates across the easement. This argument ignores the indenture's other provisions, namely that the roadway is to be "kept open" and "wholly unobstructed."

## DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Robie, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 11, 2005.