Filed 2/15/24  Paulsen v. MidPen Housing Corp. CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN PAULSEN et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>MIDPEN HOUSING<br>CORPORATION et al.,<br><br>    Defendants and Respondents. | A164765<br><br>(Sonoma County<br>Super. Ct. No. SCV264327) |

Plaintiff Roseland Village (RV) and defendant Sonoma County Community Development Commission (CDC) own adjoining properties. Since 1956, these adjoining properties have comprised a joint shopping center.  The properties are burdened by written reciprocal express easements for parking and ingress and egress.

In an action for declaratory relief and quiet title based on a written easement and alleged prescriptive easements, RV and plaintiffs Paulsen Land Co., LLC (Paulsen Land) and John Paulsen (collectively, plaintiffs) sought to prevent CDC and defendants MidPen Housing Corporation (MidPen) and UrbanMix Development, Inc. (UrbanMix; collectively, defendants) from developing CDC's property into a mixed-use residential complex that would significantly impact the parking area and a commercial access route.

1

After a phase one bench trial on the parties' declaratory relief claims and the issue of whether CDC's proposed development violates the terms of the express easement, the trial court entered judgment in favor of defendants based on its finding that the CDC development would not violate the terms of the express easement. While plaintiffs contend the court erred in so finding, we disagree and affirm.

Plaintiffs also contend the court erred by denying them a phase two jury trial on their quiet title claim based on alleged prescriptive easements. We agree as to Paulsen Land and Paulsen, and accordingly reverse that part of the judgment and remand for further proceedings. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1955, Paulsen's parents—who owned multiple parcels of land near Sebastopol Avenue in Santa Rosa—sold a portion of their land to RV. Paulsen was born the following year. He is currently president and sole owner of RV.

### The Easement Grant

In 1956, RV sold approximately 6.69 acres to Codding Enterprises (Codding). At that time, Paulsen's father was the vice president of RV, and his mother was the secretary and treasurer. RV retained the adjacent parcel. Together, the two properties comprise the Roseland Village shopping center. The Paulsens also sold land to Paulsen Land that shares a boundary with RV's land.

As reflected in the following diagram, the parcel on the left was sold to Codding, while the parcel on the right is the Paulsen Land property. In between the two parcels is the property RV retained.

2



In connection with the sale of land to Codding, RV and Codding executed a "Grant of Reciprocal Easements" (the grant). Paulsen Land is not a party to the grant. The grant states that Codding and RV's properties are "adjacent to each other" and are "now employed and used as the site of various store buildings, comprising a shopping center known as Roseland Village[.]" (Some capitalization omitted.) It further states that RV and Codding "desire to grant each other reciprocal easements over that portion of said real property which has been, and will be in the future, set aside for vehicular parking lots and drive-ways[.]"

The grant also provides mutual covenants granting Codding and RV "a non-exclusive easement to use and to allow the use of the vehicular parking lots and drive-ways which presently exist, or will be developed hereafter, on the property of the [grantor], . . . for the ingress, egress, and parking of motor vehicles, for all proper purposes connected with the operation of retail business establishments by the grantee, its lessees, tenants, or agents[.]"

3

The easements "are to be held by the respective grantees, their assigns or successors, as appurtenant to the land owned by the said respective grantees." The grant does not describe the parking lots and driveways burdened by the easement, and there does not appear to be evidence in the record of the parking lots and driveways that existed at the time RV and Codding executed the grant.

From at least 1963, approximately half of the Codding property consisted of parking, as shown in the following photograph.



The red line in the photograph illustrates what plaintiffs claim is the access route RV has been using for its commercial vehicles since the 1960s. The vehicles enter the Paulsen Land property on the right to access the retail buildings on the RV property from their rear, and then they exit through the Codding property on the left.

**The Proposed CDC Project**

At some point after the original Roseland Village parties executed the grant, Codding conveyed its portion of Roseland Village to another party. In 2011, CDC purchased the property.

CDC thereafter partnered with MidPen and UrbanMix to redevelop the parcel into a mixed-use community known as the Roseland Village Neighborhood Center Project. The completed project will consist of "an open public plaza, a civil building for a public library and community services, a community market accommodating food and retail tenants, and residential units, including affordable housing units." CDC has demolished several buildings on its property, including a grocery store, leaving only one commercial store.

The following diagram of the proposed CDC project shows the development would eliminate many of the parking spaces located on the lower half of the CDC parcel near the front of RV's retail stores, while creating new parking spaces on the upper half. It would also eliminate a portion of the access route plaintiffs claim they use for commercial vehicles, because parking spaces would block the path commercial vehicles use to enter the CDC property from the rear of RV's property.



### *The Lawsuit*

In 2019, plaintiffs sued defendants for declaratory relief, claiming CDC's proposed project violated the express terms of the written easement, as the development would prevent driveway use and parking "across the shopping center, including historical and necessary access[.]" They further asserted a claim for quiet title based on the express easement and on alleged prescriptive easements. CDC filed a cross-complaint also seeking a declaration as to the parties' rights under the written easement and asserting a cause of action for quiet title.

CDC successfully moved to bifurcate the parties' declaratory relief claims and the issues pertaining to the interpretation of the express easement from all other issues. The first phase of the trial addressed the "issues of interpretation of the Grant of Reciprocal Easements" and the parties' declaratory relief claims, and specifically "[w]hether the [grant]

6

allows the CDC to relocate the driveways and parking spaces as proposed in the development of the CDC property;" the court reserved plaintiffs' quiet title claim to establish their right to prescriptive easements for the second phase. As set forth in its 2022 final statement of decision regarding the first phase, the trial court concluded that CDC's project did not violate the express terms of the 1956 easement grant. After further briefing and oral argument regarding whether its ruling was "determinative [of] all issues which may be encompassed in Phase Two", the trial court issued a statement of decision concluding the second phase of trial was unnecessary because plaintiffs could not "meet their burden of proof to establish a claim for a prescriptive easement, distinct from the written reciprocal easement[.]" The court entered judgment in favor of defendants.

## DISCUSSION

### I.    Express Easement

In phase one, the trial court held the CDC project would not violate the written easement. We affirm.

#### A.    General Easement Law

"An easement is a restricted right to a specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership." (*Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1261.) The existence of an easement creates two tenements: the dominant tenement is held by the one who holds the right to go over another's land (e.g., here, RV); the servient tenement is held by the one whose land is traversed (e.g., CDC). (See Civ. Code, § 803[1]; *Camp Meeker Water System, Inc. v. Public Utilities Com.* (1990) 51 Cal.3d 845, 865, superseded by statute on another ground as stated in *Pacific Bell v. Public Utilities Com.* (2000) 79 Cal.App.4th 269, 281.)

_____

[1] Undesignated statutory references are to the Civil Code.

7

The owner of the servient estate may make continued use of the area the easement covers so long as the use does not " 'interfere unreasonably' " with the easement's purpose. (*Camp Meeker Water System, Inc. v. Public Utilities Com., supra*, 51 Cal.3d at p. 867.) Where, as here, the easement is not exclusive, the dominant tenement owner must use the easement so as "to impose as slight a burden as possible on the servient tenement." (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*).)

## B. Summary of Phase One Evidence

The trial court heard testimony from Paulsen and from plaintiffs' expert witnesses, Vicki Greenbaum and Douglas Donmon.

Paulsen testified the grant did not provide a specific location for the parking easement because "it had to be established after the buildings were built," though he admitted he had not yet been born at the time the grant was executed in 1956. He believed the only building on the property in 1956 was a feed mill. The photographs of the shopping center show the parking lots were striped by at least 1960; the record does not contain an earlier photograph of the shopping center.

Paulsen testified that at the time of the trial there were 272 to 274 parking spaces on the CDC property and approximately 44 on the RV parcel. He said " 'at least a hundred percent' " of RV patrons were parking on the CDC parcel. RV patrons would park on the CDC property in front of the former grocery store. Commercial vehicles took a route around the back of RV's stores so that they did not "block off the patron access[.]" "Large trucks cannot turn around back there. They have to drive through, deliver, and they go out to West Avenue to exit to continue on across the CDC property."

Regarding changes made to the shopping center over the years, Paulsen testified that at some point after 1957, a concrete tilt-up on the CDC

8

property was relocated, and the large building in the center of the shopping center was "taken down." The parties also installed vegetation and traffic barriers in the parking lots and removed a drive-thru.

Donmon, a licensed land surveyor, did not see any "substantial" change in the retail parking between the photographs of the shopping center in 1963 and 2009. The number of retail parking spaces remained "significantly the same." He nonetheless agreed that "both sides" made changes to the parking, including removing or relocating parking spaces, because "the shopping center . . . was a plan that was dynamic. They changed things that they needed to in order to accommodate their tenants."

Greenbaum, a licensed real estate broker, opined that "[p]arking is paramount to retail tenant success" and that all the current parking is necessary for RV tenants. Without the current number of parking spaces, RV would not be able to meet the Santa Rosa City Code requirements of four parking spaces per thousand feet of commercial space.

## C.    Scope of Easement

To determine whether the trial court erred in concluding the CDC project does not violate the written easement, we must first determine the scope of the easement.

### 1. Relevant Law

The scope of an easement is based on the intent of the parties. (§ 806; *Rye v. Tahoe Truckee Sierra Disposal Co., Inc.* (2013) 222 Cal.App.4th 84, 92 (*Rye*).) "Where an easement under a grant is specific in its terms, 'it is decisive of the limits of the easement[.]' " (*Wilson v. Abrams* (1969) 1 Cal.App.3d 1030, 1034 (*Wilson*); see *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 580 (*Pasadena*).) But an easement need not have "definite boundaries other than the boundaries of the servient

9

tenements themselves." (*Colvin v. Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312, overruled on other grounds in *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1109.) "An easement granted in general terms, nonspecific as to its particular nature, extent or location, is, . . . perfectly valid." (*Ibid.*)

When the extent of an easement is uncertain, courts should begin with the language of the instrument, considered in view of the circumstances surrounding its execution and the situation of the parties. (*Winslow v. City of Vallejo* (1906) 148 Cal. 723, 725.) The extent of the burden imposed upon the servient estate by the easement "can properly be measured by the use and purpose for which the easement has been granted." (*Scruby, supra*, 37 Cal.App.4th at p. 705.)

In determining the scope of the non-exclusive easement here at issue, a review of a trio of cases, beginning with *Pasadena, supra*, 17 Cal.2d 576, is instructive. In *Pasadena*, the plaintiff had a non-exclusive easement for the laying of water pipes within a five-foot strip of land, and the servient estate owner granted a third party (the defendant) permission to install water mains and service connections within the area subject to the easement. (*Pasadena, supra*, 17 Cal.2d at p. 577.) The plaintiff argued that because the grant specified the width and location of the easement, it had the right to occupy it to the full width. (*Id.* at p. 580.) Our high court disagreed, noting that the plaintiff did "not take into consideration the difference between the *burden* which the easement imposes upon the servient land and the *location* at which the burden is to be imposed." (*Id.* at pp. 578, 581.) The grant did not specifically define the extent of the burden the parties intended to impose upon the servient tenement, because an easement for laying underground

10

water pipes requires consideration of factors beyond width and location, including the number and size of pipes. (*Id.* at pp. 581–581.)

Considering the "limited purpose" of the easement to secure domestic water service for individual owners in a subdivision, the non-exclusive nature of the easement, and the lack of evidence showing an intent to protect the plaintiff from competition, the *Pasadena* court discerned no intent to preclude the servient owner from granting similar easements to third parties. (*Pasadena, supra*, 17 Cal.2d at p. 581.) Accordingly, the court held that the granting of the second easement to the defendant did not interfere with the plaintiff's easement as a matter of law. (*Ibid.*) The court further noted that because the grant neither defined the burden imposed upon the servient land, nor restricted the plaintiff from making "the fullest necessary use of the five foot strip" to support its water system, the plaintiff's use of the easement was "limited only by the requirement that it be reasonably necessary and consistent with the purposes for which the easement was granted." (*Id.* at p. 582.)

Another case, *Rye*, exemplifies the principle that the dominant tenement is not entitled to use the entire area subject to a non-exclusive easement where the grant does not define the extent of the easement. There, an express easement provided " 'for ingress, egress, parking, storage, [and] utilities over a portion of' " the servient estate. (*Rye, supra*, 222 Cal.App.4th at p. 88.) The portion of the servient tenement subject to the easement was approximately 100 feet by 102 feet and contained both a paved and unpaved area. (*Id.* at p. 96.) At issue was whether the dominant tenement could expand its parking and storage within that area beyond its historic uses. (*Id.* at pp. 92–93.) The *Rye* court determined that although the area subject to the easement was specified, the extent and location of the parking and

storage was not, and therefore the "precise area of use must be inferred from the intention of the parties." (*Id.* at p. 92.) The court noted that if the defendant had the right to use the entire area subject to the easement, it could effectively preclude the servient estate owner from making any use of that area, but there was no "clear indication" of an intent to create an exclusive easement. (*Id.* at pp. 92–93.) And "[t]he only evidence of the intention of the parties regarding the use of the easement is past usage and that was confined to the paved area and a portion of the unpaved area of the easement." (*Id.* at p. 93.) The *Rye* court therefore affirmed the judgment limiting the plaintiffs to the historic uses of the easement and enjoining them from expanding its use beyond that area. (*Id.* at pp. 87, 95.)

In *Wilson*, by contrast, the appellate court affirmed the trial court's decision to exclude extrinsic evidence purportedly showing the servient tenement owner's proposed construction of an automobile service station in a portion of a non-exclusive parking easement was reasonable because the dominant tenement owner did not use the entirety of the parking lot. (*Wilson*, *supra*, 1 Cal.App.3d at p. 1035.) The service station would eliminate 54 parking spaces. (*Ibid.*) The easement granted by the plaintiffs to the defendants was for " 'roadways, walkways, ingress and egress, public utilities, and motor vehicle parking, over, under, and along' " a " 'portion' " of the plaintiffs' property as shown on an attached plat map. (*Id.* at pp. 1033–1034.) The plat map contained markings designating individual parking stalls, light stanchions, and areas of ingress and egress. (*Id.* at p. 1035.) *Wilson* held that the plat map and its designations "clearly serve to supply the specific language necessary to sustain the finding that the easement thus created was specific and definitive in scope both as to geographical boundaries and the nature and quantity of the burden imposed on the

servient tenement." (*Ibid.*) The court further held the servient estate owner could not reform a grant clear and specific in its meaning, even if the shopping center patrons never used all the parking spaces granted under the easement. (*Id.* at p. 1036.) *Wilson* observed it was " 'well settled in this state that an easement created by grant is not lost by mere nonuser.' " (*Id.* at p. 1035.)

*Pasadena*, *Rye*, and *Wilson* stand for the proposition that the servient estate owner retains the right to use the area subject to a non-exclusive easements conveyed by grant, but the extent and nature of that right is limited by the burden the parties intended to impose upon the servient estate. (See also *City of Los Angeles v. Ingersoll-Rand Co.* (1976) 57 Cal.App.3d 889, 894 (*Ingersoll-Rand*).) To determine the extent and nature of the right, courts first look to the language of the grant, which may impose a burden on the servient tenement that is greater than the dominant tenement's needs. (See *Wilson, supra*, 1 Cal.App.3d at p. 1035.) If the grant does not specifically define the nature and quantity of the burden imposed upon the servient estate, we presume the grantors intended to provide a right to a use that is "reasonably necessary and consistent with the purposes for which the easement was granted," unless a different intent appears from the record. (*Pasadena, supra*, 17 Cal.2d at p. 582; *Ingersoll-Rand*, at p. 894.) Additionally, evidence of historical use over a reasonable time may fix the extent of the dominant tenement's use of the easement so as not to subject the servient tenement owner to perpetual speculation regarding the burden to be imposed upon its property. (*Woods Irr. Co. v. Klein* (1951) 105 Cal.App.2d 266, 270; see *Rye, supra*, 222 Cal.App.4th at p. 92.)

2.    **Analysis**

13

The grant provides RV and CDC a non-exclusive easement "to use and to allow the use of the vehicular parking lots and drive-ways which presently exist, or will be developed hereafter, on the property of the [grantor], . . . for the ingress, egress, and parking of motor vehicles, for all proper purposes connected with the operation of retail business establishments by the grantee, its lessees, tenants, or agents[.]"

The trial court concluded plaintiffs did not satisfy their burden of proof to show the CDC project was prohibited by the written easement, as they provided no evidence of the number and location of parking spaces "reasonably necessary to support the Roseland Shopping Center" or that the route used by commercial vehicles was needed to access RV's property. The court also determined the CDC project's allocation of parking satisfied the inferred intent of the grantors because the grant did not designate parking spaces and, in fact, contemplated changes to the parking lots and driveways. Thus, the court determined the burden imposed upon the servient estate by the easement was not greater than what was necessary to support the dominant tenement owner's retail businesses, and that the parking spaces were mutable.

Plaintiffs maintain the CDC project violates the express terms of the written easement because it would result in different access and parking, the implication being that the existing parking spaces and driveways define the scope of the express easement, regardless of whether it exceeds the needs of the dominant tenement. We therefore review the written easement de novo to determine the precise rights granted to the dominant tenement, bearing in

14

mind that the relevant intent is that of the grantors at the time they executed the grant.[2] (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1168.)

Beginning with the language of the 1956 instrument, we cannot conclude the grant conveys a right to use specific parking spaces or specific portions of the servient estate. The stated purpose of the easement is to provide parking and ingress and egress for motor vehicles "for all proper purposes connected with the operation of retail business establishments[.]" The grant is for a non-exclusive easement, and like in *Rye*, it does not specify the extent of the permissible parking on the servient estate. (*Rye, supra*, 222 Cal.App.4th at p. 92.) While the easement is generally limited to the parking lots and driveways "which presently exist, or will be developed hereafter," the grant does not describe the existing parking lots or driveways or designate areas of the servient estate that are to remain subject to the easement should different parking lots and driveways be developed later, as contemplated by the grant. Nor does the grant specify the location or number of parking spaces and driveways the dominant tenement is entitled to use on the servient estate. (Cf. *Wilson, supra*, 1 Cal.App.3d at p. 1035.)

Where, as here, " 'the easement is not specifically defined, "it need only be such as is reasonably necessary and convenient for the purpose for which it was created[.]" ' " (*Wilson, supra*, 1 Cal.App.3d at p. 1034; see also *Maywood Mut. Water Co. No. 2 v. City of Maywood* (1972) 23 Cal.App.3d 266, 270 [if " 'the location and limits of the right of way are not defined in the grant, a reasonably convenient and suitable way is presumed to be intended.' "].) Given the express purpose of the easement to allow for the

---

[2] The substantial evidence standard of review applies only where the interpretation turns on the credibility of *conflicting* evidence, which is not the case here. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 847.)

15

operation of retail establishments, it appears that the original grantors intended to convey to the dominant tenement owners a right to parking and access reasonably necessary and convenient for the operation of their retail establishments. That the grantors contemplated the development of different parking lots and driveways but did *not* include a specific description indicates that they left it to the servient owners to determine the location and number of parking spaces and driveways, limited by the easement holders' rights to sufficient parking and access.

The circumstances surrounding the execution of the grant and the extrinsic evidence cited by plaintiffs do not suggest otherwise. The original grantors executed the grant in connection with RV's sale of the CDC parcel to CDC's predecessor. The grant states that both properties "are now employed and used as the site of various store buildings, comprising a shopping center known as Roseland Village[.]" (Some capitalization omitted.) Because RV was selling half of its shopping center to a third party, it was likely important to the parties to ensure they had sufficient parking and access to support their retail establishments, which is consistent with an intention to grant rights to reasonably necessary and convenient parking and ingress and egress.[3] Moreover, the record shows that from at least 1960 to the present,

_____

[3] The grant's use of "will be developed hereafter" language suggests the grantors knew there would be further development of the shopping center but did not know when it would occur or the extent of the development. But to the extent plaintiffs are claiming that the current parking lots and driveways represent the scope of the easements because they were established as part of the development of the shopping center, an easement conveys a "present interest" in land, not a future interest. (See *Concord & Bay Point Land Co. v. City of Concord* (1991) 229 Cal.App.3d 289, 295.) Additionally, the record does not show the development, if any, of the shopping center from 1956 to 1960. While Paulsen testified that he believed only one building existed in

16

the parties made changes to their parking lots without objection. Although the changes were less extensive than those contemplated by the CDC project, they do include the removal and relocation of parking spaces. This indicates the parties' " 'practical construction' " of the easement was that the servient tenement owners had reserved the right to reallocate their parking spaces. (*Visitacion Investment, LLC v. 424 Jessie Historic Properties, LLC* (2023) 92 Cal.App.5th 1081, 1093 [evidence " 'showing the conduct of the parties and the practical construction placed on [the easement] by them . . . afforded the most reliable means of ascertaining the intention of the parties' "].)

Seemingly acknowledging this point, plaintiffs argue the original grantors did not contemplate "changes that would drastically alter the character of the property from a retail shopping center . . . to a housing development" with different parking and access. Even if true, that does not mean there was an intention to grant the dominant tenement the right to use specific portions of the servient estate beyond what is reasonably necessary and convenient for the operation of the shopping center. Had the grantors so intended, they easily could have said so in the grant. Only those rights expressed in the grant, and those necessarily incident thereto, pass from the servient to the dominant tenement holder. (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1599.)

Additionally, we will not imply a limitation on the servient estate owner's right to develop and use its property for other purposes. Implied terms should be read into contracts only upon grounds of obvious necessity. (*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 545; *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011)

---

1956, this is contrary to the grant's express language, which states that "both" properties are "now" used as "the site of various store buildings . . . ."

17

201 Cal.App.4th 368, 377–378.) This is especially true for easements. "It is not necessary for [the servient tenement owner] to make any reservation to protect his interests in the land, for what he does not convey, he still retains." (*Pasadena, supra*, 17 Cal.2d at pp. 578–579.)

For example, in *Ingersoll-Rand, supra*, 57 Cal.App.3d 889, an exclusive easement was granted to the Los Angeles Department of Water and Power over a narrow strip of land " 'to construct, reconstruct, maintain, operate, renew and enlarge lines of poles, towers, wires, cables and/or any other structures . . . for the purpose of transmitting . . . electrical energy, together with the right and easement for roads, ingress, egress, and other convenient purposes needed or desired at any time . . . , and the right and easement to . . . clear and keep said real property free from explosives, buildings, structures, brush and natural wood growth, and inflammable materials.' " (*Id.* at p. 891.) In addition, the grant restricted the servient estate owner to agricultural uses, and provided that no structure or material of any kind should be placed upon the right-of-way. (*Id.* at pp. 891–892.)

The trial court enjoined the servient estate owner from using the right-of-way as a parking lot, even though it found the parking lot would not constitute an unreasonable interference with the easement. (*Ingersoll-Rand, supra*, 57 Cal.App.3d at p. 893.) The appeal court, however, reversed, explaining that because the grant is of an easement for electrical transmission lines and express uses incidental to that purpose, "[u]se of the servient estate for limited temporary parking, as so defined, is thus a use of the estate reserved to the grantor[.]" (*Id.* at p. 894.)

Here, as in *Ingersoll-Rand*, the grant conveys to the dominant tenement a limited right to use the servient estate for a specific purpose, i.e., a non-exclusive easement to use the servient estate's parking lots and

18

driveways for motor vehicle parking and access "for all proper purposes connected with the operation of retail business establishments by the *grantee*[.]" (Italics added.) "Only an easement for those purposes is granted, and all other uses of the property not unreasonable in light of the interest granted is by law reserved to [the servient tenement owner]." (*Ingersoll-Rand, supra*, 57 Cal.App.3d at p. 894.) RV can still have sufficient parking and access for its shopping center regardless of how CDC uses its own property. Thus, the right to develop and use the servient estate for purposes other than retail is reserved to the servient estate owner.

Plaintiffs also contend the location of the parking and access easements became fixed decades ago. They rely on two cases, including *Youngstown Steel Products Co. of Cal. v. City of Los Angeles* (1952) 38 Cal.2d 407, 410–411, for the rule that "[o]nce the location of an easement has been finally established, whether by express terms of the grant or by use and acquiescence, it cannot be substantially changed without the consent of both parties." Plaintiffs' reliance on that rule is misplaced. The *Youngstown* court held that the dominant tenement's actual use of a right of way easement "not defined by grant" effectively constitutes the parties' "practical construction" of the grant, thereby fixing the extent of use and location of the easement. (*Youngstown Steel Products Co. of Cal. v. City of Los Angeles, supra*, 38 Cal.2d at p. 410.) The rationale for this rule is to prevent the grantee from unilaterally relocating or expanding its use of the easement, which "would make the burden imposed by the easement a matter of perpetual speculation and subject the servient owners to continual uncertainty as to their rights in the use and enjoyment of their land." (*Woods Irrigation Co. v. Klein, supra*, 105 Cal.App.2d at p. 270.) In contrast, the grant here limits the easement to the parking lots and driveways developed by the servient estate owner. RV's

19

actual use of CDC's parking lot may fix the *extent* of its use so as to avoid increasing the burden on the servient estate over time, but the grant's language and the parties' practical construction of the grant does not support an intention to fix the location of parking spaces and the attendant paths of ingress and egress.

In sum, we conclude that the CDC project does not as a matter of law violate the express terms of the grant, as the grant does not provide RV the right to use specific parking spaces or access points. Rather, the grant conveys to the dominant tenement owners the right to reasonably necessary and convenient parking and ingress and egress within the parking lots and driveways developed by the servient estate owner.

### D.    Interference with RV's Rights

Having determined the scope of the parking and access easements, we turn to whether the CDC project unreasonably interferes with RV's rights.

The owner of the servient tenement may make continued use of the area the easement covers so long as the use does not unreasonably interfere with the easement's purpose. (*Camp Meeker Water System, Inc. v. Public Utilities Com., supra*, 51 Cal.3d at p. 867.) Whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact. (*Scruby, supra*, 37 Cal.App.4th at p. 703.) The findings of the trial court must be upheld if supported by substantial evidence. (See *City of Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 543–544.)

In *Scruby*, the plaintiff had a non-exclusive easement of 50 feet for roadway and utilities purposes. (*Scruby, supra*, 37 Cal.App.4th at p. 700.) The servient estate owner used part of the easement for water tanks and vineyards, to which the plaintiff objected, claiming an exclusive right to the

20

entire easement property. (*Id.* at pp. 701–702.) The trial court concluded the plaintiff had not been granted the right to exclusive use of every portion of the easement area, and thus the servient estate owner "may make continued use of the easement area although it may not do anything that unreasonably interferes with [the plaintiff] having access to their property." (*Id.* at p. 706.) The court found the servient estate owner's use of the easement area did not unreasonably interfere with the plaintiff's right of ingress and egress. (*Ibid.*) The appellate court affirmed because the evidence showed that plaintiff used a 15-foot area of the easement for reasonable ingress and egress, and he admitted the grapevines and water tanks did not block access to his property. (*Ibid.*)

Applying *Scruby*, the trial court here concluded plaintiffs had not met their burden to show the CDC project would significantly lessen the utility of the easement, increase the burden on the owner of the easement and its use and enjoyment, or frustrate its purpose.[4] "Plaintiff presented no traffic studies, parking studies, or other such evaluation of the number of parking spaces reasonably necessary to support the Roseland Shopping Center." Regarding the commercial access route, the court noted that it was located on Paulsen Land's property, which was not subject to the written easement, and there was testimony that commercial vehicles could exit the property through a separate easement instead of through CDC's property.

Substantial evidence supports the trial court's conclusions. The record indicates the CDC project will include over 270 parking spaces. Paulsen

---

[4] For the first time on appeal, plaintiffs contend defendants should have had the burden of proof to show that the CDC project would not unreasonably interfere with RV's easement rights. This argument is forfeited. (*Smith v. St. Jude Medical, Inc.* (2013) 217 Cal.App.4th 313, 315, fn. 1.)

21

testified that he believed only 39 of those would be "convenient" to the shopping center. Even if true, plaintiffs point to no evidence showing that 39 parking spaces on the CDC property, let alone 270, plus the parking on RV's property, would be insufficient to support the shopping center. As for the commercial vehicle access route, there was evidence commercial vehicles could drive in front of RV's retail buildings instead of the back and use a different exit path that would still be available with the CDC project, and that commercial vehicles currently use both routes.

Plaintiffs point to the testimony of Greenbaum, who opined that all the parking on the CDC property was necessary for the shopping center and to meet Santa Rosa City Code requirements. But the trial court did not credit her opinion because she did not conduct a traffic survey or count the parking spaces, and she testified that she had no knowledge as to how many shopping center patrons were using CDC parking. We defer to the trial court's credibility determinations. (See *People v. Poe* (1999) 74 Cal.App.4th 826, 831.)

Accordingly, we conclude the trial court did not err in finding that the CDC project would not unreasonably interfere with RV's rights under the written easement.

## II. Prescriptive Easements

A prescriptive easement gives the claimant a right to make a specific use of someone else's property. (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305.) It is proven by a use which has been for five years "(1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right." (*Ibid.*) In addition to their claims based on the written easement, plaintiffs asserted a cause of action for quiet title to establish their right to prescriptive easements for "parking and access" on

CDC's property. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 24 [an action to quiet title seeks a judgment declaring the plaintiff's rights in relation to a piece of property].)

Plaintiffs claim the trial court erroneously denied a jury trial on their prescriptive easement claim. We agree as to Paulsen Land and Paulsen. Since phase one of the trial was limited to determining RV's rights under the express easement to use CDC's parking lots and driveways, there remains the open question of whether Paulsen Land and Paulsen had permission from either RV or CDC to use CDC's parking lots and driveways. Thus, phase one was not determinative of Paulsen Land and Paulsen's quiet title claim based on alleged prescriptive easements though it was determinative as to RV's claims.

## A.     Additional Background

As previously noted, the trial court granted CDC's motion to bifurcate the declaratory relief causes of action and the issues pertaining to whether CDC's project violates the terms of the express easement and to try them first before the remaining issues. The express easement grant was attached to plaintiffs' first amended complaint. That grant shows that RV and CDC's predecessors are the only parties to the easement – Paulsen Land is *not* a party thereto. Paulsen Land owns the parcel of land adjacent to that owned by RV. Paulsen is president of RV and the managing partner of Paulsen Land. Phase one of trial was determined in CDC's favor.

Plaintiffs also asserted a quiet title claim based on alleged prescriptive easements. Before moving on to phase two of trial to determine that claim, the court allowed plaintiffs to address whether its ruling on the first phase (the parties' rights under the express easement) was determinative of all issues in phase two. Plaintiffs argued that they, and in particular Paulsen

23

Land and Paulsen, had a right to a jury trial to establish their right to prescriptive easements. They claimed that Paulsen Land's tenants and patrons and Paulsen used CDC's parking lots and that Paulsen Land used the commercial vehicle access route over CDC's property. Defendants claimed plaintiffs could not establish their right to a prescriptive easement as a matter of law because RV's use of CDC's parking lots and driveways was permissive under the express grant, and Paulsen Land and Paulsen's use was also permissive as "invitees" of the shopping center.

The trial court found phase one of trial determinative of all issues encompassed in phase two because plaintiffs could not "meet their burden of proof to establish a claim for prescriptive easement, distinct from the written reciprocal easement[.]" The court noted that the parties disputed whether Paulsen Land was an entity separate from RV, and it acknowledged that Paulsen Land was not a party to the written easement. Nonetheless, it relied on the statement in the first amended complaint that "plaintiffs have the same economic interest in the Easements in this lawsuit; accordingly the name 'Roseland Village' will also include Paulsen Land Co., LLC and John Paulsen." (Some capitalization omitted.) Based on this "judicial admission," it found that "the three plaintiffs are so intertwined that, as argued by Defendants, the use of commercial vehicles from the [Paulsen Land] property would by necessity be permissive." It is unclear from the statement of decision whether this "judicial admission" was also the basis for the court's conclusion that Paulsen and Paulsen Land had permission to use CDC's parking lots.

## B.   Analysis

Plaintiffs and MidPen agree, as do we, that plaintiffs have the constitutional right to a jury trial to establish their prescriptive easement

24

rights, unless the phase one trial regarding the interpretation of the express easement is determinative of the prescriptive easement issues. (Cal. Const., art. I, § 16.) "Where a case involves both equitable and legal causes of action, the trial court may bifurcate the case to try the equitable issues first, because resolution of the equitable issues may eliminate the need for a trial of the legal causes of action." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 50.) Plaintiffs' claim to establish their right to prescriptive easements is a legal cause of action to which the right to a jury trial attaches, while their claim for a declaration of their rights under the written easement is equitable. (See *Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114, 123–125; *Caira v. Offner, supra,* 126 Cal.App.4th at p. 24.)

As we now explain, the court's interpretation of the express easement was determinative of the prescriptive easement issue as to RV, but not as to Paulsen and Paulsen Land.

## 1. RV

The trial court concluded the express easement phase of trial was determinative of RV's claim to establish alleged prescriptive easements because RV necessarily had permission under the written easement to use the parking lots and driveways over which it is claiming prescriptive rights. We agree as the " 'hostile' " use element of a prescriptive easement claim means that the "claimant's use of the property was made without the explicit or implicit permission of the landowner." (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.) A claimant cannot acquire a prescriptive easement where the landowner gives his or her consent to the claimant's use of the property. (*Richmond Ramblers Motorcycle Club v. Western Title Guaranty Co.* (1975) 47 Cal.App.3d 747, 754.) In *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, for example, the Second District affirmed the trial

court's judgment declaring the plaintiff did not have a prescriptive easement over certain roadways in part because the plaintiff could not establish hostile use, as she was entitled to use the roadways pursuant to an express easement. (*Id.* at pp. 163, 182–183, 189.)

Here, under the express easement, RV and CDC's predecessor gave each other the right to use the parking lots and driveways "which presently exist, or will be developed hereafter" on their respective properties. Prior to the grant, RV owned the property currently owned by CDC. As we have explained, and as the trial court implicitly found in phase one of trial, the express easement gave RV the right to a reasonably necessary use of the parking lots and driveways developed by the servient estate owner. Thus, RV had permission under the express easement to use CDC's parking lots and driveways.

Plaintiffs argue that there remain triable issues of material fact concerning RV's prescriptive easement rights because they were precluded from introducing evidence of "historic prescriptive use" by RV. However, they do not identify what evidence they would have presented to show RV's prescriptive use of CDC's property separate from its rights under the express easement. An appellant's burden to demonstrate error " 'requires more than simply stating a bare assertion that the judgment, or part of it, is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment . . . .' " (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

We therefore conclude that phase one of trial disposed of RV's quiet title action to establish its right to prescriptive easements, and thus the trial court did not err in denying RV a jury trial on that claim. (See *Golden West Baseball Co. v. City of Anaheim, supra*, 25 Cal.App.4th at p. 50.)

26

### 2. Paulsen and Paulsen Land

Paulsen Land and Paulsen were not parties to the express easement. Nonetheless, the trial court concluded the express easement precluded their claim to establish prescriptive easements, finding as to their alleged prescriptive easement for "patron vehicle access and parking lot use" that "any such users . . . would by necessity be either invitees or through permissive use." The court also relied on a purported "judicial admission" in the first amended complaint to conclude Paulsen Land and Paulsen had permission under the express easement to use the commercial vehicle access route over CDC property. In determining that plaintiffs are "so intertwined" that the use of the commercial vehicle access route over CDC's property was necessarily permissive under the express easement, the trial court relied on the allegation in plaintiffs' complaint that they "have the same economic interest in the Easements in this lawsuit; accordingly the name 'Roseland Village' will also include Paulsen Land Co., LLC and John Paulsen." (Some capitalization omitted.) This is not the kind of unambiguous statement that rises to the level of a judicial admission, and there is no other basis in the record for concluding that phase one was determinative of Paulsen and Paulsen Land's claim to establish prescriptive easements.

For the doctrine of judicial admission to apply and preclude a party from offering contradictory evidence on the issue allegedly admitted, the pleading constituting a judicial admission must be unambiguous and unequivocal, not a tacit admission or a fragmentary and equivocal concession. (See, e.g., *Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 385; *Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522.) In other words, it must be an "unequivocal concession of the truth of a matter." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.)

27

The statement in the first amended complaint regarding plaintiffs sharing the same economic interest is not an unambiguous concession that Paulsen Land and Paulsen are the same as RV such that they necessarily have permission under the express easement to use CDC's parking lots and driveways.[5] The allegation that plaintiffs have the same "economic interest" in the easements can mean many things, including, for example, that the easements are important to the viability of plaintiffs' respective retail establishments. That plaintiffs decided to collectively refer to themselves as "Roseland Village" in their complaint is not an express admission *of fact* that they are the same entity.

MidPen contends Paulsen Land and Paulsen had permission to use CDC's parking lots and driveways. This contention is anchored on their claims that the phase one trial testimony showed that (1) Paulsen Land and Paulsen used CDC's parking lots and driveways for many years and (2) because Paulsen Land had to cross RV's property to get to CDC's property, they were invitees of RV. But the trial court did not make any factual findings in phase one of the trial regarding whether Paulsen Land and Paulsen had *permission* to use CDC's parking lots and driveways or whether they were an invitee of RV, nor was there an opportunity for them to develop the record on those issues. (Cf. *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1244 ["Here, the fact that the trial of the equitable issues first resulted in factual findings that implicated the legal claims does not mean that [plaintiff]

---

[5] MidPen also points to another allegation in the complaint, which states that "the use by Roseland Village . . . for direct access . . . and for parking for the Roseland Village commercial activity was also pursuant to the mutually honored and known recorded easements." (Some capitalization omitted.) Contrary to MidPen's assertion, this is not an unequivocal admission that all use made by Paulsen and Paulsen Land of CDC's parking lots and driveways was with permission from RV or CDC.

28

was improperly denied the right to a jury trial"].)  And MidPen's contention that Paulsen and Paulsen Land necessarily had permission to use CDC's property because it is open to the public is unsupported by authority or citation to the record.  In general, " '[a] public invitee is a person who is invited to enter or remain on land as a member of the public *for a purpose for which the land is held open to the public.*' "  (*O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729, 737, italics added.)

Given the absence of a judicial admission or factual finding on the issue, we cannot conclude that phase one of the trial determined whether Paulsen Land and Paulsen had permission under the express easement to use CDC's parking lots and driveways.  The express easement grants RV and CDC and their "lessees, tenants, or agents" the right to use each other's parking lots and driveways "for all proper purposes connected with the operation of retail establishments *by the grantee. . . .*"  (Italics added.)  Because phase one of the trial was limited to determining the rights of the parties under the express easement and no evidence was taken as to Paulsen Land and Paulsen's permission to use CDC's parking lots and driveways, and Paulsen Land and Paulsen are not parties to the express easement, there remains the question as to whether Paulsen Land and Paulsen had permission from either RV or CDC to use CDC's parking lots and driveways.  Thus, phase one was not determinative of Paulsen Land and Paulsen's prescriptive easement claim.

In sum, the trial court did not err in concluding the express easement phase of trial was determinative of RV's quiet title claim based on alleged prescriptive easements, but we must reverse that part of the judgment pertaining to Paulsen Land and Paulsen's prescriptive easement claim because they are not parties to the written easement, and the court did not

make any findings regarding whether their use of CDC's parking lots and driveways was permissive. They are therefore entitled to further proceedings on their prescriptive easement claim.

## DISPOSITION

The judgment is reversed in part as to Paulsen Land and Paulsen's cause of action against defendants for quiet title based on alleged prescriptive easements, and the matter remanded for further proceedings. In all other respects, the judgment is affirmed. Each side is to bear their own costs on appeal.

 

 

 

_____

Petrou, J.


WE CONCUR:


_____

Tucher, P. J.


_____

Rodríguez, J.

A164765/*Paulsen et al., v. MidPen Housing Corp. et al.*